HITT *v.* STATE.

Mar. 23, 1953

No. 38661 25 Adv. S. 22 63 So. 2d 665

*Robt. B. Smith* and *A. T. Patterson,* for appellant.

*George H. Ethridge,* Assistant Attorney General, for appellee.

Lotterhos, J.

This case involves a conviction of receiving stolen property. The indictment charged that on January 28, 1952, appellant bought and received from three named persons certain stolen property, knowing it to be stolen, which property was described as three sacks of cotton seed, the property of L. C. McFerrin, two spools of barbed wire, the property of T. M. Magers, and thirteen sacks of cotton dust or poison, the property of Kit Bryant. The evidence for the state tended to show that on the stated date, after dark, the three men named in the indictment stole three sacks of cotton seed from L. C. (Pete) McFerrin; that they took the seed to appellant's home and sold it to him; that they then left his home, went to another place, and stole two rolls of barbed wire from T. M. Magers; that they next went to the Kit Bryant place and stole thirteen sacks of cotton poison; that they took the wire and poison to appellant's home later that night and sold it to him; and that appellant knew that the property he purchased was stolen. Appellant admitted that he purchased the cotton seed and the poison from the three men, but denied that he knew it was stolen property. He denied that the sellers made two trips to his house, and claimed that he bought the seed and the poison at the same time. He denied buying the wire from them, and testified that the two rolls of wire found at his place a day or so later were part of four rolls of wire he had bought in a store early in January. It was shown by the owner of the store that appellant had in

fact purchased four rolls of wire on January 2, 1952. It was developed in the proof that the thirteen sacks of poison were owned by Kit Bryant (a $\frac{1}{8}$ interest), J. W. Bryant (a $\frac{1}{8}$ interest), and Ernest Woodard (a $\frac{3}{4}$ interest). Kit Bryant was the manager of the place and Woodard was a tenant.

Appellant first contends that there was a fatal variance between the indictment and the proof relative to the ownership of the stolen property, in that it was alleged that the thirteen sacks of poison were the property of Kit Bryant, whereas the proof showed that he owned only a one-eighth interest, the remaining part of the title being in two others. The trial judge agreed with this contention, and sustained a motion for amendment of the indictment. However, there was no written order for the amendment entered on the minutes. Therefore, the variance, if any, was not eliminated by the action of the court in sustaining the motion. Sec. 2533, Code of 1942; Shurley v. State, 90 Miss. 415, 43 So. 299; and Davis v. State, 150 Miss. 797, 117 So. 116. See, also, Sec. 1639, Code of 1942.

It has been held in McAlpin v. State, 123 Miss. 528, 86 So. 339, that upon the trial of an accused on a charge of receiving stolen property, the ownership of the property alleged to have been stolen must be proved as laid in the indictment. This case was cited and followed in Pippin v. State, 126 Miss. 146, 88 So. 502, which involved a charge of obtaining goods under false pretense. The indictment charged that the accused had defrauded E. H. Rempe. The proof showed that he in fact had defrauded F. Rempe and Son, a partnership which was composed of E. H. Rempe and his brother. It was held that there was a fatal variance between the indictment and the proof. This court has reached the same conclusion in a larceny case, McDowell v. State, 68 Miss. 348, 8 So. 508. (Hn 3) It is essential in an indictment for receiving stolen property to describe the property with the same particu-

larity as is required in an indictment for larceny. Wells. v. State, 90 Miss. 516, 43 So. 610.

If the proof in this case were merely to the effect that Kit Bryant owned a one-eighth interest in the poison and the other persons owned the rest of the title, these authorities would control. But there is evidence in this record that Kit Bryant was manager of the place, that the poison belonged to the place, that it was in a cotton house on the place, and that the cotton house was nailed up. On the other hand, there is evidence that the tenant, Ernest Woodard, owned three-fourths of the poison, that Kit Bryant and the tenant used the cotton house to put things in, that the tenant had access to the house, and that the tenant had as much right to use the poison as Kit Bryant did. In view of this proof in the record, can it be said that there is no material variance because the possession of Kit Bryant was such as to support the allegation of ownership by him? The general statement has been made that "property may be described as that of the person from whose possession it was stolen, and therefore an averment of ownership in such person is sustained by proof that he had the actual care, management, and control of the property for another." 76 C. J. S., Receiving Stolen Goods, Sec. 16 d, p. 30. See also Renfrow v. State, 154 Miss. 523, 122 So. 750; Horn v. State, 165 Miss. 169, 147 So. 310; and Minneweather v. State, 55 So. 2d 160 (Miss.).

Since this case must be reversed and remanded for reasons hereinafter stated, we do not find it necessary to follow this first proposition to a conclusion, in order to determine whether there was a material variance here, under the somewhat conflicting testimony in the record. In other words, we are assuming that on a second trial the record will be such that the point will not be presented.

Appellant also assigns as error the refusal of the trial judge to permit him to make a record of the testimony

which he desired to offer from a certain witness, when the court had sustained objections to several questions propounded and the witness had not been permitted to answer. The witness first identified himself and stated that recently he had been over appellant's place. He was then asked several questions with reference to any new fence observed on the place, but objections thereto were sustained and no answers were made. Counsel for appellant thereupon asked, ''Could we exclude the jury and let me make the record?'', to which the court replied, ''I will not let you do that. If he knows the buying of any wire, get that.'' Counsel then asked, ''And the court denies me the right to make my record?'', and the court stated, ''Yes, sir.'' It would seem that the object of appellant was to show by this witness the amount of new fence wire on appellant's place at a date after that of the alleged offense. It is to be noted in this connection that appellant showed that he had purchased four rolls of wire on January 2, 1952; that he offered to show that he had purchased another roll of wire in February, after the alleged offense; that the record shows that officers picked up two out of four rolls of wire found at the home of appellant after the alleged offense; and that appellant denied that he had bought any wire from the three men who testified that they had sold stolen wire to him. We can imagine that the witness referred to might have been able to testify to material facts in support of the claim of appellant that he purchased no wire from the three thieves; but we are not in a position to know, or to pass upon the competency and materiality of the proposed testimony of this witness, because the trial judge refused to permit appellant to state into the record the evidence which he expected to adduce.

In support of this assignment of error, appellant relies, by analogy, on the case of Martin v. Gill, 182 Miss. 810, 181 So. 849, and other cases referred to therein, announcing the well established rule that ▮▮▮ when a party

seeks a reversal because of excluded testimony he must have shown in the record what the testimony would have been if the witness had been allowed to testify, so that the appellate court may see from the record itself whether the offered evidence would be material and admissible. It seems to us that the point is well taken by appellant, because, if a trial court were permitted to deny a party the right to show in the record what a proposed witness would testify, the result would be that, no matter how material and important the testimony might be, the party offering the witness and his testimony would be helpless to obtain relief on appeal. ██ Accordingly, it follows that counsel has the right, when an objection to the testimony of a witness is sustained, to show in the record by appropriate means the nature and content of the proposed testimony. Since this right was denied to appellant, this case must be reversed and remanded.

A third proposition raised on this appeal is whether appellant was indicted and tried for two separate offenses under the single count of the indictment, in view of the state's proof, and, if so, whether this was error. It will be observed from the introductory paragraph of this opinion that the state offered proof to show that the three men who allegedly stole the property and sold it to appellant, first purloined the cotton seed, transported it to appellant's home, and sold it to him; that they thereafter went to two other places and stole the cotton poison at one and the barbed wire at the other; and that they then carried the poison and the wire to the residence of appellant and sold them to him. All of these events occured on the night of January 28, 1952.

██ It is, of course, settled law that it is improper to charge the commission of two different crimes in a single count. "Duplicity in criminal pleading is the joinder of two or more distinct and separate offenses in the same count of an indictment or information." 27 Am. Jur., Indictments and Informations, Sec. 124, p. 683. A

leading case is Hamilton v. State, 129 Fla. 219, 176 So. 89, 112 A. L. R. 1013, where a conviction of receiving stolen goods, as charged in a single count, was reversed. The indictment alleged the receipt of the property on a certain date, as if there were one offense only, but the state's proof showed the receipt of the goods on three different dates, and as separate transactions. In reversing the case, the Florida Court said: ''Receiving or concealing different articles of stolen property at different times and on separate and unconnected occasions constitute separate offenses and cannot be prosecuted as one crime, in one count, though all of the property is afterwards found in the possession of the defendant at the same time and place.''

It is true that in the case now before the Court the two transactions involving the purchase of stolen property occurred on the same night; but they were, nevertheless, separate and distinct events. When the first purchase was made, the articles involved in the second transaction had not yet been stolen. We think that the doctrine of the Hamilton case is applicable.

There is a question here as to whether the contention made by appellant is properly before this Court for consideration on appeal. In Wilkinson v. State, 77 Miss. 705, 27 So. 639, it was said that ''objection cannot be made after verdict to an indictment bad for duplicity''; and the Court cited what is now Sec. 2436, Code of 1942. It is apparent that appellant in the case at bar could not raise the point by demurrer, since the duplicity does not appear on the face of the indictment. It was incumbent on him, therefore, to make his objection by some appropriate means, after the state's proof disclosed the fact that two alleged offenses were involved, and before the verdict of the jury. Although appellant should perhaps have presented his objection more specifically than he did, yet we conclude that his request for a peremptory

instruction was sufficient, especially on the present appeal, where the record contains other reversible error.

It is unnecessary to discuss and pass upon other assignments of error set up by appellant, as the case will be reversed and remanded for the reasons set forth above.

Reversed and remanded.

*McGehee, C. J.*, and *Lee, Kyle* and *Ethridge, JJ.*, concur.