# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-KA-01158-COA

**MARVIN 'BUTCH' LOGAN**                                                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/14/1996 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ALBERT LIONEL NECAISE |
| | WILLIAM ROSS CAPPS |
| | ROBERT WARREN MOAK |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | GUILTY OF SEVEN COUNTS OF DEFRAUDING STATE GOVERNMENT AND FIVE COUNTS OF UTTERING FORGERY - THREE YEARS EACH COUNT TO RUN CONSECUTIVELY WITH COUNTS 8-12 RUNNING CONCURRENT TO COUNTS 1-7 |
| DISPOSITION: | REVERSED AND REMANDED - 04/20/1999 |
| MOTION FOR REHEARING FILED: | 5/19/99; denied 09/07/99 |
| CERTIORARI FILED: | 10/06/99; granted 12/16/99 only as to first issue of validity of search and seizure; granted 3/16/2000 as to issues 2, 3 & 4 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., KING, P.J., AND DIAZ, J.

DIAZ, J., FOR THE COURT:

¶1. Marvin "Butch" Logan appeals the decision of the Lincoln County Circuit Court convicting him of seven

counts of defrauding the state government and five counts of uttering forgery. Logan asserts the following issues in this appeal: (1) that the jury was unduly prejudiced by the explanation of Mississippi law from the testimony of the State's witnesses, (2) that the trial judge failed to suppress evidence obtained from unlawful searches and seizures, (3) that the trial judge allowed the testimony of the State's handwriting expert without proper notice, (4) that the jury was unduly prejudiced from the testimony referencing stolen motors found on defendant's property, (5) that the trial judge improperly allowed evidence of uncharged forged receipts in violation of MRE 404(b) and 403, (6) that the court allowed insurance investigative files into evidence in violation of the Mississippi Rules of Evidence, (7) that the trial judge improperly allowed the State's expert on identifying stolen vehicles to testify outside his scope of expertise, (8) that the trial judge failed to demur to the indictment due to duplicity, (9) that the trial judge failed to dismiss multiplicious counts, and (10) that the improper comments made by the State in the closing arguments unduly prejudiced the jury. Finding numerous errors, we reverse and remand for a new trial.

## FACTS

¶2. Logan lived in Brookhaven, Mississippi, and operated a business rebuilding salvaged Chevrolet S-10 and GMC pick up trucks in his spare time. The business consisted of a small mechanic's shop located behind his residence. Logan purchased numerous trucks at salvage auctions conducted statewide by different insurance companies. Some of the trucks were purchased to rebuild and others were purchased for parts. Over several years, Logan rebuilt over seventy vehicles.

¶3. After Logan rebuilt a wrecked truck, he was required by Mississippi law to have it inspected by the state highway patrol so that a new certificate of title could be issued to replace the salvage title. After the inspection, the application for title went to the Mississippi State Tax Commission who in turn issued a new title.

¶4. Several other individuals also used Logan's shop to rebuild vehicles. In October of 1995, Johnny Joe Gunnell, an individual who used Logan's shop, was stopped by the police for a traffic violation. Gunnell was driving a stolen vehicle. Several more vehicles at Gunnell's house turned out to be stolen, and Gunnell directed authorities to Logan and his repair shop. The police arrived at Logan's house, and they searched the repair shop. They examined the various vehicles and parts in the shop area. During this search the police observed an automobile engine with metal shavings around the engine but they did not seize anything. The next day, the police returned to Logan's property with Virgil Luke, a criminal investigator who specialized in stolen vehicle identification. The police seized an engine and an engine with a transmission, claiming them to be stolen. The police further told Logan that he had to bring in all vehicles in his possession for inspection. Logan brought in numerous vehicles, many of which the highway patrol seized.

¶5. Logan was indicted on several charges of violation of the Mississippi Chop Shop Act and conspiracy. On February 14, 1996, the police obtained a search warrant to search Logan's residence. Upon searching his residence, the police seized four boxes of files containing documents which were organized into separate folders for the various vehicles that Logan had rebuilt over the years. Logan was then indicted by the grand jury for seven counts of defrauding the Mississippi Department of Public Safety and the Mississippi Tax Commission and six counts of uttering forgery to the Mississippi Department of Public Safety when he submitted documents to the Department of Public Safety so that he could retitle seven different automobiles that he had rebuilt.

¶6. On July 19, 1996, the defense filed a combined motion to suppress the evidence challenging the several

different searches of his home and shop and the requirement by the highway patrol that he bring them all vehicles in his possession that he had rebuilt. At a hearing on July 19, 1996, the court denied the motion to suppress *in toto*.

¶7. The State filed a motion to transfer the case from Judge Keith Starrett to Judge Mike Smith, and the court entered an order to that effect. On August 12, 1996, the State requested, and the circuit clerk issued, a subpoena *duces tecum* to obtain hand-written documents from the Mississippi Employment Security Commission so they could analyze the handwriting of Carolyn Logan, Logan's wife. The State also presented a motion to the trial judge requesting an order requiring Carolyn Logan to provide handwriting exemplars. Although Logan contends that he was never served a copy of this motion, the trial judge signed an order requiring handwriting exemplars on August 13, 1996. On September 23, 1996, the State filed a motion to exclude witnesses produced on September 20, 1996, which was granted by the trial court. On September 25, 1996, the State filed a second motion to amend the indictment so that it would conform to the evidence. On the same day, Logan filed a motion to "demur to the indictment due to duplicity" which was denied by the trial judge. Logan also filed a motion to "dismiss the multiplicious charges" which was also denied by the trial judge. After the State added an expert witness two working days prior to trial, Logan filed a motion *in limine* or in the alternative to continue the trial. The trial judge denied this motion, stating that two working days was sufficient time for the defense to prepare for this expert witness.

¶8. The case went to trial on September 24, 1996 and on October 4, 1996, the jury found Logan guilty of twelve of the thirteen counts in the indictment. On October 9, 1996, Logan filed a motion for a new trial which the trial court denied. Feeling aggrieved, Logan perfected this appeal.

## DISCUSSION

## I. THE JURY WAS UNDULY PREJUDICED BY THE EXPLANATION OF MISSISSIPPI LAW FROM THE TESTIMONY OF THE STATE'S WITNESSES

¶9. Mississippi Rule of Evidence 701 applies to lay witness testimony:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to the clear understanding of his testimony or the determination of a fact in issue.

In *Jones v. State*, 678 So. 2d 707, 710 (Miss. 1996), the Mississippi Supreme Court explained the two-part test for admissibility of lay witness opinion testimony, stating that:

> First, the testimony must assist the trier of fact. Second, the opinion must be based on the witness' firsthand knowledge or observation . . . . The second prong of the test is in accordance with M.R.E. 602 requiring that a witness who testifies about a certain matter have personal knowledge of that matter.

Furthermore, Mississippi Code Annotated Section 99-17-35 (Supp. 1997) states that *only* the trial judge will instruct the jury as to the principles of applicable law in a particular case and that it must be done in writing. *See Collins v. State*, 701 So. 2d 791, 795 (Miss. 1997)(holding that it was error for trial judge to send copy of *Blacks Law Dictionary* to jury room). The Mississippi Supreme Court held that the only person who can instruct the jury on the law is the trial judge. *Clemons v. State*, 320 So. 2d 368, 372 (Miss. 1975)(stating "it is the duty of the trial judge to instruct the jury and not the district attorney").

¶10. Over Logan's objection, Investigator Allen Applewhite of the Mississippi Highway Patrol testified about the Mississippi Chop Shop Law. The trial judge stated that Applewhite would be allowed "to testify as to what he [knew] of the law as it concern[ed] these inspections which [were] part of his job." Applewhite continued his testimony by relating and explaining the history and requirements of the Mississippi Chop Shop Law. During the testimony of Virgil Luke, the State asked him numerous questions about the law in Mississippi with regard to stolen vehicles and searches and seizures of vehicles. The State further questioned Luke about the authority of the investigators to inspect automobile rebuilders, dealers, and salvage yards without search warrants. The court overruled Logan's objection holding that Luke was qualified to discuss the Mississippi law because he was a former highway patrolman who knew the inspection laws. The State continued questioning Luke about his authority "to inspect certain places doing certain kinds of business dealing with automobiles." The court again overruled Logan's objection and allowed Luke to testify about a Mississippi statute that gave officers the authority to do administrative inspections.

¶11. Luke and Applewhite both gave instructive testimony to the jury about the applicable law in this case in direct contravention to Mississippi law. Both were testifying outside of their respective area of expertise when they explained various portions of Mississippi law to the jury. Under statutory law and case law such as *Collins* and *Clemons*, only the trial judge can instruct the jury, in writing, on the law. Here, the trial judge erroneously ruled that both investigators could testify about Mississippi law with regard to this case. This assignment of error is well taken.

## II. THE TRIAL JUDGE FAILED TO SUPPRESS EVIDENCE OBTAINED FROM UNLAWFUL SEARCHES AND SEIZURES

¶12. Section 23 of the Mississippi Constitution and the Fourth Amendment to the United States Constitution are the foundation of Mississippi search and seizure law. *Jones v. State, ex rel., Mississippi Dept of Public Safety*, 607 So. 2d 23, 26 (Miss. 1991). The wording of the federal amendment is substantially the same as that of our state constitution. *Id*. "There is a constitutional preference for searches pursuant to a warrant. Where there is no warrant, 'the issue for consideration is whether there was valid consent so that the warrantless search was valid.'" *Id*.

¶13. In *Penick v. State*, 440 So. 2d 547, 551 (Miss. 1983), the Mississippi Supreme Court extended greater protections under State consensual search law than did the United States Supreme Court:

> We accord to the U.S. Supreme Court the utmost respect in its interpretation of the U.S. Constitution . We must, however, reserve for this Court the sole and absolute right to make the final interpretation of our State Constitution and, while of great persuasion, we will not concede that simply because the U.S. Supreme Court may interpret a U.S. Constitutional provision that we must give the same interpretation to essentially the same words in a provision of our state Constitution.

The supreme court further held that consent is valid if there was knowledgeable as well as voluntary waiver of a party's constitutional right not to be searched. *Id.* When the defendant knows that he has a right to refuse and is cognizant of his rights in the premises, then that is knowledgeable consent. *Id*. at 549-50.

¶14. The United States Supreme Court addressed the consent exception to the requirement of a search warrant in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). Voluntariness is the pivotal determination in

a valid consent to search. *Id*. at 224. The Court observed that there are "two competing concerns [which] must be accommodated . . . the legitimate need for such searches and the equally important requirement of assuring the absence of coercion." *Id*. at 227. The test of voluntariness is determined from a consideration of the "totality of the circumstances." *Id*. at 280.

¶15. In *Jones*, the Mississippi Supreme Court applied *Schneckloth*:

> Consideration must be given to whether the circumstances were coercive, which necessitates attention to whether the person was confronted with many officers or a display of weapons, whether he was in custody and, if so, whether the circumstances of the custody were coercive, and whether the alleged consent was obtained in the course of station house interrogation.

*Jones*, 607 So. 2d at 27. The subject's knowledge of the right to refuse is another factor in determining voluntariness. *Id*.

¶16. For a search warrant to be valid, there must be probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). According to the Mississippi Supreme Court, "Probable cause exists when facts and circumstances within an officer's knowledge, or of which he has reasonable trustworthy information, are sufficient themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it." *Bevill v. State*, 556 So. 2d 699, 712 (Miss. 1990). The police provide evidence of the underlying facts and circumstances by sworn affidavit which may be supplemented by oral testimony. *Barrett v. Miller*, 599 So. 2d 559, 566 (Miss. 1992). In *Carney v. State*, 525 So. 2d 776, 787 (Miss. 1988), the Mississippi Supreme Court held that indirect search warrants would not be sanctioned because the Fourth Amendment was designed to protect against general warrants and other exploratory searches. Search warrants must list the items to be seized with particularity. *Id*. at 785. "Descriptions in search warrants need not be positively specific and definite, but are sufficient if the places and things to be searched are designated in such manner that the officer making the search may locate them with reasonable certainty." *Hamilton v. State*, 556 So. 2d 685, 688 (Miss. 1990).

¶17. In the case of *Bumper v. North Carolina*, 391 U.S. 543 (1968), the United States Supreme Court set out the standard of proof to be established where the prosecutor seeks to justify the lawfulness of a search. The State has the burden of proving that consent was given freely and voluntarily, and "this burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Id*. at 548. The Mississippi Supreme Court applied the *Bumper* rationale in *Luton v. State*, 287 So. 2d 269 (Miss. 1973) and stated that:

> [It] is the burden of the state in a criminal prosecution such as this to prove that the accused voluntarily consented to the search of his property . . . the state must prove such consent beyond a reasonable doubt. The same degree of proof is required to show that an accused waived his rights surrounding the search.

*Id*. at 271-72.

¶18. The "fruit of the poisonous tree" doctrine-also known as the exclusionary rule-"prohibits introduction into evidence of tangible materials seized during an unlawful search." *Marshall v. State*, 584 So. 2d 437, 438 (Miss. 1991) (citing *Murray v. U.S.*, 487 U.S. 533, 536 (1988)). The exclusionary rule prohibits "testimony concerning knowledge acquired during an unlawful search." *Id*. (citing *Silverman v. U.S.*, 365

U.S. 505 (1961)). Most importantly, the doctrine:

> prohibits the introduction of derivative evidence, both tangible and testimonial, that is, the product of the primary evidence, or that is otherwise acquired as a result of the unlawful search, up to the point at which the connection becomes "so attenuated as to dissipate the taint."

*Id*. (citations omitted). Several exceptions to the "fruit of the poisonous tree" doctrine have been recognized by the United States Supreme Court. For example, the "independent source" exception was recognized in *Silverthorne Lumber Co. v. U.S.*, 251 U.S. 385 (1920), and the "inevitable discovery" exception was acknowledged in *Nix v. Williams*, 467 U.S. 431 (1984).

¶19. In this case, there were three different searches of Logan's residence in Brookhaven. The first search was on October 8, 1995, when the local sheriff and a group of law enforcement officers went to the Logan's residence after finding stolen vehicles at Johnny Joe Gunnell's residence. At that time the police did not seize any evidence, but they did testify during trial about what they saw at Logan's residence. The second search was the following day when the sheriff returned with a number of highway patrol investigators. During this search the police seized an engine, an engine and transmission mounted together, and a number of vehicles. Thereafter, the police told Logan to bring in all of the vehicles in his possession that he had rebuilt for police inspection. The police seized several other vehicles from Logan under this procedure. The final search of Logan's residence occurred on February 14, 1996, pursuant to a search warrant. Upon searching Logan's residence, the police seized four boxes of files containing documents which were organized into separate folders for the various vehicles that Logan had rebuilt over the years.

¶20. Logan filed a motion to suppress the evidence obtained during the searches and seizures alleging several constitutional violations. With regard to the first search of Logan's residence, he claims that the search was without a warrant, without probable cause, without consent, and a violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution and under Article 3, Section 23 of the Mississippi Constitution. Additionally, Logan claims that he and his wife were not properly advised of their rights as required under the Fifth Amendment and Fourteenth Amendment to the United States Constitution and the Mississippi Constitution of 1890 including the right to refuse consent and *Miranda* warnings. Therefore, Logan asserts that they could not give valid consent, and in the alternative, that if any was given, it was the product of coercion, and therefore, not voluntary.

¶21. With regard to the second search of Logan's residence, he claims the same constitutional violations as in the first search, but also states that the October 9 search was tainted from the constitutional violations of the October 8 search of Logan's residence and shop. With regard to the vehicles that the police investigators requested that Logan produce, he claims that the police failed to properly advise him of his legal rights under the Mississippi and United States Constitutions including the right to refuse consent, the right not to produce incriminating evidence, and the *Miranda* warnings. Logan also alleges that this evidence was tainted from the constitutional violations of the October 8 and 9 searches, and any consent given by Logan was the result of duress and coercion and was therefore involuntary.

¶22. With regard to the February 14, 1996, search of Logan's residence, he asserts that the warrant was issued without probable cause and in violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Article 3, Section 23 of the Mississippi Constitution of 1890, and any evidence obtained should be suppressed under the exclusionary rule. Logan alleges that the primary location searched was his automobile repair shop which is a building that is fenced in and located behind his

house. This building was not named in the search warrant. He also claims that the items seized were not evidence of a crime upon which the probable cause allegation was based. Instead, Logan asserts that the underlying facts cover only allegations of stolen vehicles and parts, not records of purchases or all records. Logan claims that this was a general search warrant for "documents relating to a chop shop" and is not sufficiently stated with particularity to be upheld under Mississippi law. Logan alleges that the scope of the warrant and the search was that of a general warrant which is prohibited under the federal and state constitutions. Logan states that the police exceeded the scope of the search warrant when they seized thousands of pages of his records and removed the documents from the premises to review for any evidence of crimes. He claims there was no probable cause to search his home and that there was no evidence that these documents were kept at his home or that they even existed. Logan asserts that the search warrant did not indicate that a reasonable person would believe these items would be at his residence. He further contends that this search warrant was tainted by the previous constitutional violations in obtaining evidence in the previous searches.

¶23. The threshold question for this Court to determine is whether there was valid consent obtained from the Logans prior to the first warrantless search on October 8, 1995. The testimony of the sheriff indicates that there was no valid consent on the part of the Logans since he did not advise them of their right to refuse consent as required under *Pennick*. Furthermore, the sheriff testified that he never advised the Logans of their *Miranda* rights nor did he obtain a signed, written consent to search form until the day after the first search.

¶24. During the second search, the police seized numerous vehicles and vehicle parts after they had unlawfully searched the premises the day before. At that point, the police testified that they suspected Logan, although they did not arrest him or advise him of his *Miranda* rights. After applying the law to the facts of this case, we must conclude that the evidence seized on October 9, 1995, although executed with a search warrant during the second search, was derivative of information obtained through the unlawful search of Logan's residence the day before, and therefore, should have been excluded. None of the doctrinal exceptions are applicable in this case. Therefore, the trial judge's failure to exclude this evidence requires reversal.

¶25. Under *Gates*, there must be probable cause for a search warrant to be valid. The Fourth Amendment as applied through *Coolidge* and *Carney* protects citizens against general warrants and other exploratory searches such as the searches conducted herein. In the case *sub judice*, Logan claims that there was no probable cause, that this was a was a general warrant, and that it did not properly describe the place to be searched which was the shop located behind the house and that any evidence obtained should be suppressed under the exclusionary rule. Logan further asserts that the shop behind his house is a totally self-sustaining building with a separate driveway, separate utilities, taxed separately for property taxes, and not connected to his home in any meaningful way which made it outside the scope of the warrant.

¶26. Logan is correct in stating that this was a general search warrant for "documents relating to a chop shop" and not sufficiently stated with particularity under *Carney*. Since the first search warrant was conducted without consent in violation of *Pennick* it is invalid and all evidence obtained from that search is inadmissible. The evidence obtained during the second and third searches is inadmissible under the exclusionary rule and because of the prohibition against general search warrants. Therefore, this assignment of error is well taken, and all of the evidence obtained during the three searches should be suppressed.

**III. THE TRIAL JUDGE ALLOWED THE TESTIMONY OF THE STATE'S HANDWRITING EXPERT WITHOUT PROPER NOTICE**

¶27. The guidelines for resolving a discovery violation are set out in the concurring opinion by Justice Robertson in the case of *Box v. State*, 437 So. 2d 19 (Miss. 1983). Justice Robertson suggested that, "In cases where the state seeks to offer into evidence that which it ought to have disclosed pursuant to a discovery request but didn't, it is first incumbent upon the defendant to make a timely objection." *Id*. at 23.

¶28. The second guideline suggested by Justice Robertson is that:

> If, after examining the evidence involved or interviewing the would-be witness, the defendant is of the opinion that he has been subjected to unfair surprise and that his defense will be prejudiced if the evidence is offered without his having had the opportunity to investigate independently the credibility of the evidence and possible responses thereto, it should then be incumbent upon him to request expressly that the court grant a continuance. In most instances this will necessitate a declaration of a mistrial.

*Id*. The final guideline is that if the State is of the opinion that for whatever reason it wants to use the witness or the evidence in its case against the defendant, the order for a continuance must stand. *Id*. at 24.

¶29. The Mississippi Supreme Court has followed the *Box* test even though the applicable discovery rule has changed to Uniform Rule of Circuit and County Court Rule 9.04(I). *Lester v. State*, 692 So. 2d 755, 786 (Miss. 1997) (overruled on other grounds by *Manning v. State*, 1999 WL 174246 (Miss. Mar. 31, 1999). In *Lester*, the Mississippi Supreme Court stated that:

> URCCC 9.04(I) now applies to discovery violations. The rules require that the trial court grant the defense reasonable time to examine the new evidence that the prosecution attempts to introduce at trial without prior disclosure. If the defense still shows unfair surprise or prejudice and requests a continuance or mistrial, the trial court must either exclude the evidence or grant a continuance.

¶30. In the case *sub judice,* the State disclosed an expert witness with his report two working days prior to trial and five weeks after the deadline for the prosecution to submit their witnesses had passed. To properly respond to testimony of the handwriting expert, the defense should have had the opportunity to have the court continue the case so that they could have a defense expert review the handwriting examination of the State's witness along with the original documents and exemplars. The court failed to grant this continuance and allowed the State's handwriting expert to testify.

¶31. The parties agreed that the deadline for the State to submit all witnesses, evidence, statements and summaries of witness testimony as required by Uniform Circuit and County Court Rule 9.04 was August 13, 1996. The State was ordered by the court to submit their discovery by this date. After the State notified Logan of its expert handwriting expert, he filed his motion within two working days after receiving notice of the new expert witness.

¶32. In the instant case, the prosecution had over seven months from the time they seized the evidence until trial to obtain a handwriting analysis. However, the State waited until several weeks before the trial was

scheduled to begin to obtain a handwriting examination. Burkes testified that he completed his report on September 9, 1996 and had discussed the results of this examination with Investigator Jim Smith before this date. The State did not disclose this information or list this witness until September 20, 1996, after business hours and two working days prior to trial. This insufficient notice, which also violated the discovery rules, did not allow Logan enough time to have an expert review the report and examine the same original documents and exemplars. Furthermore, these necessary documents were never presented to Logan at any time. Therefore, this assignment of error is well taken.

## IV. THE JURY WAS UNDULY PREJUDICED FROM THE TESTIMONY REFERENCING STOLEN MOTORS FOUND ON LOGAN'S PROPERTY

¶33. The Mississippi Supreme Court has held that before a trial court can consider evidence of uncharged crimes under Mississippi Rule of Evidence 404(b), the evidence must satisfy some relevant evidentiary purpose "beyond simply showing that the defendant is the sort of fellow likely to commit the crime charged." *Watts v. State*, 635 So. 2d 1364, 1368 (Miss. 1994) (quoting *Jenkins v. State*, 507 So. 2d 89, 92 (Miss. 1987)). The *Watts* court further stated that, "If and when evidence clears the hurdle of Rule 404(b), however, it must still clear the test of Rule 403." *Id*. In *Watts*, the court did not agree with the State that the evidence in question was necessary to prove intent and ruled that evidence of this nature is not of great probative value even though there may be an argument that it is in some way technically relevant. *Id*. at 1368-69.

¶34. In the case of *Darby v. State*, 538 So. 2d 1168 (Miss. 1989), the Mississippi Supreme Court applied the rationale of *United States v. Beechum*, 582 F.2d 898 (1978) in conducting a balancing analysis under MRE 403. According to the court:

> It must first be determined that the evidence possesses probative value that is not substantially outweighed by its potential for undue prejudice, and must meet the other requirements of Rule 403. The other requirements being that before an exception to the general rule excluding evidence of other crimes from admission in criminal cases can be invoked, the trial court must be satisfied that 1) there is plain, clear and convincing evidence of a similar offense, 2) the offense is not too remote in time, 3) the element of the similar crime for which there is a recognized exception is a material issue in the case, and 4) there is a substantial need for the probative value of the evidence.

*Darby*, 538 So. 2d at 1173. Under *Newsom v. State*, 629 So. 2d 611, 614 (Miss. 1993), the supreme court held that specific instances of conduct in cases where character or the trait of character is "an essential element of the charge, claim, or defense" are admissible whether on cross or direct examination.

¶35. In the case *sub judice*, the trial judge allowed the State to elicit testimony from several witnesses that they found stolen motors on Logan's property. Logan asserts that these stolen motors were the subject of a separate indictment against him. Second, Logan claims that the only evidence supporting the supposition that these motors were stolen was hearsay evidence. He also claims that this testimony was not admissible under MRE 404(b) and that the probative value did not substantially outweigh the prejudicial effect.

¶36. During the direct examination of Virgil Luke, the State asked him whether any stolen property was found on Logan's property when it was searched. Logan objected, but the State argued that the character of Logan was in issue, so specific instances of conduct were relevant under MRE 404(b) and 405. Logan stated that this evidence was the subject of a separate indictment against him and that character was not in

issue since it was not an element of the indicted charges. The trial court ruled that this evidence was admissible as relevant evidence and the probative value outweighed the prejudicial effect. Logan was correct in asserting that character was not an element of the indicted charges, and therefore, specific instances of conduct were not relevant or admissible under MRE 404(b) and 405. This assignment of error is also well taken and these specific instances of conduct should not have been permitted where Logan's character was not an issue.

## V. THE TRIAL JUDGE IMPROPERLY ALLOWED EVIDENCE OF UNCHARGED FORGED RECEIPTS IN VIOLATION OF MRE 404(B) AND 403

¶37. As the Mississippi Supreme Court stated in *Jenkins v. State*, 507 So. 2d 89, 93 (Miss. 1987):

> To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

*Id*. The Mississippi Supreme Court has held that evidence of other uncharged crimes is so prejudicial that it should not be admitted when compared to the probative value. *Usry v. State*, 498 So. 2d 373 (Miss. 1986); *Smith v. State*, 656 So. 2d 95, 100 (Miss. 1995)(holding in drug possession case that evidence of past drug sales alone is "an insufficient evidentiary basis for the conclusion that present possession is with the intent to distribute").

¶38. In the instant case, the trial judge allowed the introduction into evidence of extensive records of receipts for repaired vehicles that the police seized from Logan's house. Logan objected to this introduction because the court stated that the uncharged forgeries were admissible since he was charged with forgery. These documents were admitted through the testimony of Investigator Jeff Roberts of the Mississippi Highway Patrol who testified that he seized all of these receipts from Logan's residence. The State called Jay Stoll, Robert Hiatt, and Danny Grabert, local body shop owners, who testified that the receipt records with their businesses' name on them were not from their business nor were the signatures theirs. Later in the trial, the court allowed testimony that the Mississippi Highway Patrol seized thirty-one vehicles in their investigation into Logan. Even if the evidence of uncharged crimes presented here would have been admissible under 403, the danger of unfair prejudice of the evidence outweighed any probative value. Therefore, this assignment of error is well taken and this evidence, since it is so highly prejudicial, should not have been allowed into evidence during Logan's trial.

## VI. THE COURT ALLOWED INSURANCE INVESTIGATIVE FILES INTO EVIDENCE IN VIOLATION OF THE MISSISSIPPI RULES OF EVIDENCE

¶39. In the case *sub judice*, Logan contends that (1) the State did not have the custodian or other qualified witness to introduce the insurance files from the different insurance companies and (2) the State denied Logan his Sixth Amendment right to confrontation by not calling each insurance adjuster who investigated the insurance claim on each wrecked vehicle.

¶40. Rule 803(6) of the Mississippi Rules of Evidence provides:

> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in

any form, of acts, events, conditions, opinions or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances or preparation indicate lack of trustworthiness.

¶41. Rule 901 of the Mississippi Rules of Evidence provides:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what it proponents claims.

(b) Illustrations. By way of illustration only, not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be.

The Mississippi Supreme Court explained that the witness in *Wells* was qualified to authenticate the business bank records because "he prepared the summary with the help of his bookkeeper, and his testimony reveals that he was a witness with knowledge that the summary was what it claimed to be." *Wells v. State*, 604 So. 2d 271, 275 (Miss. 1992).

¶42. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). "Hearsay evidence is inadmissible unless it falls within one of the known exceptions." *Clark v. State*, 693 So. 2d 927, 931 (Miss. 1997). The Mississippi Supreme Court held that "only when hearsay evidence qualifies under a 'firmly rooted hearsay exception' can it be admitted over a right to confrontation objection by the defendant." *Gossett v. State*, 660 So. 2d 1285, 1296 (Miss. 1995). A criminal defendant is guaranteed the right to confront the witnesses against him under the Sixth Amendment to the United States Constitution. U.S.C.A. Const. Amend. VI.

¶43. In the case *sub judice*, the State used Investigator Luke to testify from an insurance investigative report from a State Farm Insurance adjuster in Gretna, Louisiana. Logan objected to this testimony based on hearsay without an exception. However, the trial judge allowed the testimony despite this objection. Luke testified that he obtained the insurance investigative file by making a request to State Farm to get their hard copy documents. The insurance investigative file also contained photographs of various automobiles that were wrecked and sold for salvage, an accident report, and the report of the insurance adjuster who evaluated the damage. Luke further testified by reading from the reports and describing what was depicted in the photographs. Logan objected to this testimony directly from the insurance adjuster's file as being hearsay and further that they were not properly authenticated because there was no representative from State Farm to authenticate the report. Luke continued to read from the various reports in the insurance files after the court overruled Logan's objections.

¶44. The State was allowed to introduce a similar report from Mississippi Farm Bureau despite Logan's objection as to hearsay and that the chain of custody of these insurance files was not established. Nonetheless, the trial judge allowed Luke to testify from the documents about damages to the various

vehicles as compared to what was reported to the Mississippi Highway Patrol and the State Tax Commission when Logan had the vehicles retitled.

¶45. Here, Luke was not involved in preparing the insurance files, did not work directly for each insurance company, nor did he even know the adjusters. Luke was called to testify as an expert witness in the field of vehicle identification. He was employed by an organization called the National Insurance Crime Bureau, a nonprofit corporation funded by the insurance industry with a purpose to assist law enforcement officers. Since Luke was not qualified to introduce the insurance files from the different insurance companies, the documents were not properly authenticated, and Logan was denied his right to confront the insurance adjuster who investigated and prepared the files on each wrecked vehicle. Therefore, Logan's right to confront witnesses against him was violated and this assignment of error is also well taken.

## VII. THE TRIAL JUDGE IMPROPERLY ALLOWED THE STATE'S EXPERT ON IDENTIFYING STOLEN VEHICLES TO TESTIFY OUTSIDE HIS SCOPE OF EXPERTISE

¶46. The Mississippi Supreme Court stated the limits of testimony by an expert in *Ludlow Corp. v. Arkwright-Boston Mfrs. Ins. Co.*, 317 So. 2d 47, 50 (Miss. 1975):

> An expert must have acquired special knowledge of the subject matter in question by study of recognized authorities 'or by practical experience' enabling him to give the jury assistance and guidance in solving some problem which jurors are not able to solve because of their own inadequate knowledge.

(citing *Capital Transport Co. v. Segrest*, 254 Miss 168, 181 So. 2d 111 (1965)).

¶47. At trial, the judge allowed Luke to testify about the damages to the automobiles and the repairs even though Luke had not been properly qualified as an expert on car repairs. The State also allowed Luke to testify that sheet metal in two of the State's exhibits had not been repaired in anyway because it was encompassed in his expertise as a vehicle identification specialist. At another point, Luke was allowed to testify as an expert in metallurgy by discussing the metal type of the rivets and whether they were factory originals or homemade. The judge overruled Logan's objection to this line of questioning by stating that Luke had satisfactorily explained what was done to the rivets to make them appear as originals. Luke further testified as to whether the vehicles were repairable. Since the trial court allowed Luke to testify outside his area of expertise, this issue is also well taken.

## VIII. THE TRIAL JUDGE DID NOT ERR IN FAILING TO DEMUR TO THE INDICTMENT BECAUSE THERE WAS NO DUPLICITY

¶48. Mississippi Code Annotated Section 99-7-2 (Rev. 1994) states in pertinent part that:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

> (2) Where two(2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

(3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.

(4) The jury or the court, in cases in which the jury is waived, shall return a separate verdict for each count of an indictment drawn under subsection (1) of this section.

¶49. The Mississippi Supreme Court has long held that it is improper to charge the commission of two different crimes in a single count. *Hitt v. State*, 217 Miss. 61, 67, 63 So. 2d 665,668 (1953). The *Hitt* Court defined duplicity, stating that, "Duplicity in criminal pleading is the joinder of two or more distinct and separate offenses in the same count of an indictment or information." *Id*. The court reversed the conviction stating that these separate offenses could not be prosecuted as one crime in one count. *Id*. at 68.

¶50. Several recognized exceptions exist to this rule including such offenses as assault and battery and burglary and larceny. *Wolf v. State*, 281 So. 2d 445, 446 (1973). The *Wolf* Court further explained that:

The rationale of the exceptions seems to be that a statement in an indictment of the motive or purpose which promoted the principal criminal action, although it may in itself, if taken alone, charge an offense, is not objectionable, if it is incidental and relates to a description of the principal offense, is not inconsistent with it, and is part of a single transaction.

*Id*.

¶51. Logan claims that counts one through seven of the indictment each charge him with presenting false documents and statements to the Mississippi Department of Public Safety in the titling of motor vehicles in violation of Mississippi Code Annotated Section 97-7-10. Logan also states that counts one through seven of the indictment charge him with altering the public vehicle identification numbers on each of the vehicles which is a violation of Mississippi Code Annotated Section 63-25-5 although not specifically addressed by statute number.

¶52. Mississippi Code Section 97-7-10 (Rev.1994) states in part that:

(1) Whoever, with intent to defraud the state or any department, agency, office, board, commission, county, municipality or other subdivision of state or local government, knowingly and willfully falsifies, conceals or covers up by trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall . . . be punished . . . .

Mississippi Code Section 63-25-5 (Rev. 1996) reads in pertinent part that:

(2) Any person who knowingly alters, counterfeits, defaces, destroys, disguises, falsifies, forges, obliterates or knowingly removes a vehicle identification number with the intent to misrepresent the identity or prevent the identification of a motor vehicle or motor vehicle part shall be guilty of a felony . . . upon conviction . . . .

A separate charge may be described in an indictment, although it was just included as a necessary element of proof to specifically charge the greater offense. *Harrigill v. State*, 381 So. 2d 619, 621 (Miss. 1980).

¶53. Logan filed a motion to "demur to the indictment" which is now referred to as a motion to quash the

indictment after the Mississippi Rules of Evidence were promulgated in 1985. This motion to quash alleged that the indictment was duplicitous because two distinct and separate offenses were joined in the same count for each of counts one through seven. The trial judge denied the motion after a hearing and stated that this indictment met the requirements of Section 99-7-2.[(1)] Here, the charge of altering vehicle identification numbers was described in the indictment but not specifically charged as a crime against Logan. Instead, some of the elements of that charge make up the greater offense of presenting false documents and statements to the Mississippi Department of Public Safety in the titling of motor vehicles in violation of Mississippi Code Annotated Section 97-7-10 (Rev. 1994). Therefore, the trial judge was correct that the indictment was not duplicitous and there was no error with respect to this issue.

## IX. THE TRIAL JUDGE DID NOT ERR IN DISMISSING THE COUNTS AS MUTIPLICIOUS

¶54. *Blockburger v. United States*, 284 U.S. 299, 303 (1932) states that "[w]here the same act or transaction constitutes a violation of the two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." The case of *Shook v. State*, 552 So. 2d 841, 848-49 (Miss. 1989) outlines the procedure for analysis in Mississippi under the parameters of *Blockburger*. In *Shook*, the court looked at the multiplicity claim of shooting into a dwelling and aggravated assault in a drive by shooting. The Mississippi Supreme Court held that "shooting into a dwelling house is not required to establish an aggravated assault, and neither injury nor attempt to injure is required to prove shooting into a dwelling house." Here, we must determine whether, under these facts, the crimes of defrauding the State government and uttering forgery constitute the same offense. Under *Blockburger*, the objective elements of each offense must be examined. *Id*.

¶55. We have examined the fraudulent statement statute, Miss. Code Ann. § 97-7-10(2) (Rev. 1994), and the uttering statute, Miss. Code Ann. § 97-21-59, (Rev. 1994).[(2)] There is a distinction between these two statutes. On the uttering charges, it is required that Logan pass an instrument knowing it to be forged, altered, or counterfeited. The charges and proof were that the receipts were forgeries and passed knowing them to be forgeries. The fraudulent statement statute required different proof in that Logan made different and or additional false statements or representations in the applications for inspection claiming that the vehicle identification numbers were not altered.

¶56. By analogy to the *Shook* case, uttering forgery is not required as proof of defrauding State government and neither is passing the forgery to the government an element of uttering. The fact that two crimes involved the same car is not the determining factor. It was Logan's acts and statements that garnered him additional charges. Moreover, as the trial court noted, Mississippi Code Annotated § 97-7-10(2) clearly shows the intent of the legislature to create and punish an additional crime when one commits fraudulent acts against the State. Therefore, there is no merit in the argument that the counts should have been dismissed as duplicitous.

## X. THE IMPROPER COMMENTS MADE BY THE STATE IN CLOSING ARGUMENTS UNDULY PREJUDICED THE JURY

¶57. The Mississippi Supreme Court has held for many years that it is reversible error for the State to comment on the failure of an accused to testify in his own behalf. *Lambert v. State*, 199 Miss. 790, 797, 25 So. 2d 477, 479 (1946). In *Lambert*, the district attorney, in his closing argument to the jury, said:

"Where is the testimony that he did not do it? . . . There's no denial."*Lambert*, 25 So. 2d 479. The defense counsel objected and moved for a mistrial which the trial court denied. *Id*. The supreme court analyzed the history of the Mississippi cases where it reversed trial courts for remarks made by the prosecution referencing failure of the accused to testify. *Id*. For example, the *Lambert* court considered the case of *Reddick v. State*, 72 Miss. 1008, 16 So. 490 (1895), where the prosecution stated, "[the defendant] has not denied it." The defense *in Reddick* objected to this statement. Thereafter, the prosecutor attempted to cure his remarks and defended his statement by arguing "that it was not his intention to refer to the fact that the defendant had not testified." *Id*. at 490. The Mississippi Supreme Court stated that the intention of the attorney is immaterial--that the test is whether the language can reasonably be construed to be a comment upon the failure of defendant to take the stand." *Lambert*, 199 Miss. at 793, 25 So. 2d at 478. In *Hoff v. State*, 83 Miss. 488, 35 So. 950, 950-51 (1904), the Mississippi Supreme Court reversed a conviction where the prosecutor held a letter up to the jury in his closing argument and stated, "Nobody on earth denies that he wrote it. . . . No living soul has denied that the defendant seduced this little girl."

¶58. Over the years, many cases have explained the *Lambert* analysis as requiring each case to be considered individually where there is a question as to the State's comments on the defendant's failure to testify. *Conway v. State*, 397 So. 2d 1095, 1100 (Miss. 1980). The issue in *Conway* dealt with the statement by the prosecutor that "the evidence was uncontradicted." *Id*. at 1099. In its analysis, the supreme court looked to whether the comment was a general comment or whether the comment referred to specific acts alleged to have been done by the defendant. *Id*. In *Conway*, there was no transcript of the closing arguments of counsel; therefore, the court declined to determine the context in which the alleged statement was made and instead, considered the comment as a general statement with regard to the evidence as a whole. *Id*. at 1100.

¶59. The Mississippi Supreme Court has stated that "fundamental fairness requires that a defendant should not be subjected to testimony and tactics which are highly prejudicial and inflammatory." *Acevedo v. State*, 467 So. 2d 220, 226 (Miss. 1985). In the case of *Clemons v. State*, 320 So. 2d 368, 371 (Miss. 1975) the court stated that:

> The purpose of the closing argument before a jury is to enlighten the jury. It is the duty of the district attorney to fairly sum up and point out the points presented by the state on which the prosecution contends a verdict of guilty is proper. There are, however, certain well established limits beyond which counsel is forbidden to go; he must confine himself to the facts introduced in evidence and to the fair and reasonable deductions and conclusions to be drawn therefrom.

¶60. In this case, the assistant district attorney specifically argued that Logan filed homemade rivets in an attempt to make them look like factory rivets. In making this argument, he states, "There's no evidence to the contrary." This statement is a direct comment on Logan's failure to testify whether it was intended to be one or not under *Lambert*. The State also discussed crimes which were not charged or in issue, and the trial judge allowed the testimony. Later the district attorney tried to inflame the jury by telling them that if they "violate [their] oath, [they] will have defrauded the State of Mississippi."

¶61. Here, the district attorney pointed out Logan's failure to testify, argued about charges and crimes not before the jury, and improperly influenced the jury's passions. Instead, he should have confined himself to the facts in evidence and relied on the jury's fair and reasonable decision without inflammatory language. The only recourse at this point in the trial would have been for the trial judge to declare a mistrial. Since he

did not, we reverse on this issue and the others stated above for a new trial consistent with this opinion.

¶62. **THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.**

**KING, P.J., BRIDGES, COLEMAN, LEE, AND THOMAS, JJ., CONCUR.**

**McMILLIN, C.J., CONCURRING IN PART AND DISSENTING IN PART BY SEPARATE WRITTEN OPINION, JOINED BY SOUTHWICK, P.J., IRVING AND PAYNE, JJ.**

McMILLIN, C.J., CONCURRING IN PART, DISSENTING IN PART:

¶63. I would agree with the majority that this conviction must be reversed based on several of the errors that occurred in the first trial. However, I would respectfully disagree that the trial court committed reversible error in failing to suppress evidence admitted at trial that had been obtained pursuant to several searches conducted by investigating officers.

¶64. Logan claims that the first 'search,' in which investigating officers only conducted a visual inspection of Logan's shop and did not seize any evidence was an unconstitutional search in that it was not undertaken with the informed consent of the property owner and was not authorized by a valid search warrant. Logan urges that his wife's decision to permit the inspection was not voluntary since she was both uninformed as to her right to refuse and intimidated by the presence of a large number of law enforcement officials who had arrived unannounced and *en masse*. There was a lengthy inquiry into the circumstances that led Mrs. Logan to permit the officers to walk through the shop, and there is no contention that she lacked authority to consent to the inspection. The trial court did not find that Mrs. Logan was so intimidated by the presence of these officers that she felt coerced or forced to permit the inspection against her will. In ruling on such subjective matters, the trial judge is given wide discretion. *Luton v. State,* 287 So. 2d 269, 272 (Miss. 1973). He observes the witnesses first hand, hears the evidence and then determines whether the consent was, in fact, voluntary or not. *Id.* When his ruling is contested on appeal, an appellate court may set aside that ruling only if the court is satisfied that the trial court was manifestly wrong in so deciding. *Smith v. State,* 465 So. 2d 999, 1002 (Miss. 1985). In my view, there simply is no legitimate basis to argue that the trial court was so patently incorrect in its findings that this Court ought to interfere.

¶65. One of Logan's arguments rests on the proposition that Mrs. Logan was not affirmatively informed by the officers of her right to decline the inspection of the premises. When the issue is the voluntariness of a consent to search, there is no absolute requirement that the person receive a Miranda-like notification that the person can refuse the officer's request, even though the Mississippi Supreme Court has suggested that it will, using state constitutional concerns, apply a stricter test of voluntariness than the United States Supreme Court does under Fourth Amendment jurisprudence. *Penick v. State,* 440 So. 2d 547 (Miss. 1983). According to the *Penick* decision, there must be a dual determination of consent to search accompanied by a showing that the consent was knowledgeable. *Id.* at 550. This apparently indicates that the State must show that the consenting party was actually aware of that party's right not to consent to the search. *Id.* Though evidence that the party was, in fact, informed of that right by the requesting officer would be one means of demonstrating the requisite knowledge, there is no Mississippi authority suggesting that this is the only way to demonstrate knowledge.

¶66. In this case, after Mrs. Logan was requested to consent to an inspection of her husband's shop, she declined to do so unless the officers agreed to remove a substantial number of the police cars parked at the residence. The very act of attaching conditions to the consent to search and demanding compliance with the conditions before the search began appears a strong indicator that Mrs. Logan understood that she was not obligated to permit the officers to inspect the premises.

¶67. Logan's objection to the second search, which was also a consensual one, is not entirely clear. Logan himself consented to this second search and, in fact, signed a written consent form in advance of the search. Again, the issue of whether the consent was obtained through threats or coercion such that it was not, in truth, voluntary is one committed primarily to the broad discretion of the trial court. I can find no abuse of that discretion in the court's decision not to suppress evidence obtained in that search.

¶68. One of Logan's arguments against the third search, conducted under a search warrant, appears to be that information improperly gleaned from the earlier searches of Logan's shop was used to establish probable cause for the warrant. Logan's argument necessarily rests on the foundation that the earlier searches were unconstitutional invasions of federal and state constitutional rights against unreasonable searches and seizures. For the reasons I have already discussed I would reject the charge of im propriety in the earlier searches. Since this third search was conducted pursuant to a warrant obtained on probable cause, I see no arguable basis to exclude any evidence seized during that search.

¶69. The third search was also attacked as having been conducted under an invalid warrant because its scope was too broad to meet constitutional strictures. The Fourth Amendment states that a warrant must describe "the place to be searched, and the persons *or things to be seized."* U.S. Const. amend. IV (emphasis supplied). The warrant permitted the search and seizure of documents relating to Logan's vehicle repair and rebuilding activities conducted on his premises. Logan contends that this description of items to be searched for in the warrant was too indefinite and did not accurately describe the documents and records actually seized in the search or, in the alternative, described documents that could not possibly have been evidence of the kind of crime then under investigation, *i.e.,* the operation of a "chop shop." His argument depends, in part, on the assertion that the warrant included invoices for purchases of automobile parts and a "chop shop" operator, in the course of operating that kind of illegal activity, would not reasonably be expected to purchase parts.

¶70. On this third search, the officers seized a number of files containing invoices for parts purchases and related expenses regarding the rebuilding of wrecked vehicles. Some of these documents later proved to be forged and were used in this criminal prosecution. I am of the opinion that, so long as Logan was suspected of operating a "chop shop" where stolen vehicles were brought in and either disassembled to be sold for their constituent parts or disguised so that they would not be readily identifiable, any documents relating to vehicles rebuilt or repaired by Logan at his shop facility would have potential relevance in a criminal investigation. It was not necessary for the officers to know, in advance, what records, invoices, or other documents Logan would actually have on the premises in order to obtain a warrant to search for such evidence so long as they had a reasonable basis to conclude that some such documentary evidence might be discovered on the premises. In that circumstance, the officers' inability to describe with more certainty the documents that would be sought does not appear fatal to the warrant.

¶71. I would reverse and remand for a new trial because of the cumulative effect of the other prejudicial occurrences during the trial discussed in the majority; however, in the event of a subsequent trial after our reversal, I would not deprive the State of the evidence gathered in its searches of Logan's premises.

**SOUTHWICK, P.J., AND IRVING AND PAYNE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.**

1. Section 99-7-2 Miss. Code Ann. (Rev. 1994) states in pertinent part that:

(1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

(2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

(3) When a defendant is convicted of two (2) or more offenses charged in separate counts of an indictment, the court shall impose separate sentences for each such conviction.

2. Section 97-7-10 states in pertinent part that:

(1) Whoever, with intent to defraud the state or any department, agency, office, board commission, county, municipality or other subdivision of state or local government, knowingly and willfully falsifies, conceals or covers up by trick, scheme or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any statement or entry, shall, upon conviction, be punished . . . .

Section 97-21-59 states that:

Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the altering or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery.