BARNES *v.* STATE

No. 40426 March 4, 1957 92 So. 2d 863

*Pershing Sullivan,* Laurel, for appellant.

*J. R. Griffin, Asst. Atty. Gen.,* Jackson, for appellee.

ROBERDS, P. J.

Barnes, the appellant, was convicted of grand larceny and sentenced to one year in the state penitentiary.

He says the description of the property in the indictment was not legally sufficient. Omitting the formal parts, the indictment charged that: "L. C. Barnes on the 5th day of July 1956 in the County and District aforesaid did wilfully, unlawfully and feloniously take, steal, and carry away ten 110 pound sacks of Dairy Feed of the value of $3.50 each, of the total value of $35.00 the personal property of Glaze Anderson."

In the following Mississippi cases the descriptions of the property contained in the indictments were held to be good:

In Brown v. State, 51 Miss. 718, the indictment described the property as: "one mule the property of William Adkins". The opinion stated that it is not necessary to give the color, age, or any particulars concerning the mule by way of description or identity.

In Jackson v. State, 173 Miss. 776, 163 So. 381, the property was described as "one certain Ford automobile, two-door make, of the property of Ben Stevens and of the value of more than $25 * * * ".

In Daniels v. State, 212 Miss. 223, 54 So. 2d 272, the property was described as "a certain diamond ring, better description of said diamond ring being to the grand jurors unknown." In this case the defendant was convicted of receiving stolen goods.

In Cook v. State, 217 Miss. 788, 65 So. 2d 277, the opinion states: "The indictment charged the appellant and Gordon Moss and Robert Lee Moss with the felonious taking, stealing and carrying away of one cow of the value of $85 in money, the personal property of H. H. Dodson."

In Gant v. State, 219 Miss. 804, 70 So. 2d 26, defendant was charged with the theft of ''one Chevrolet motor complete, less head'', (shown by proof to have been a 1941 model), and ''one Chevrolet motor complete, less head'', (shown by the proof to have been a 1946 model), and ''one Plymouth motor complete, with head'', each of the value of $25, stating the names of the owners and that a more particular description of the property was unknown to the grand jurors.

In Hill. v. State, 226 Miss. 445, 84 So. 2d 679, the property was described as: ''one hay mower, of the value of $75, good and lawful money of the United States, then and there the personal property of Ross Brown, Barry Brown * * *.''

Barnes cites and relies upon Pitts v. State, 115 Miss. 189, 76 So. 140; Cooksey v. State, 175 Miss. 82, 166 So. 388; and Rutherford v. State, 196 Miss. 321, 17 So. 2d 803. In the Pitts case the indictment described the property as ''three certain yearlings and one certain cow, a more particular and accurate description of which is to the grand jury unknown, then and there the personal property of D. E. Spearman of the value of $50.'' It developed that the cow did not belong to Spearman. The Court said if there was omitted from the indictment the name of the owner of the cow that the description would be bad but implied that had the indictment named the true owner the description would have been good. In the Cooksey case the defendant was charged with burglary. The indictment charged that the building which was burglarized was owned by M. F. Farris. The proof showed that Farris had died about ten days before the burglary and therefore the title to the building was necessarily in someone else. The Court said ''An indictment charging burglary must allege ownership of the building burglarized, and such ownership must be proved as alleged.'' The Court noted that the indictment

might have been amended in accordance with the fact of ownership.

Barnes relies mainly on the Rutherford case. The indictment charged Rutherford with the theft of "a quantity of clover seed, the personal property of Charles Fletcher, and of the value of more than $25 in lawful money." The Court held that description insufficient. But the Court further said: "It is a matter of common knowledge that the property in the instant case could have been readily described in the indictment either as an approximate number of pounds of clover seed and of the value of $170 or as being about 8½ sacks of clover seed, weighing approximately 100 pounds each, and of the value of a stated sum per sack or 100 pounds, or as being a specified number of bushels of clover seed of a stated value per bushel, thereby giving such individuality to the transaction as to enable the defendant, if acquitted or convicted under the indictment, to· plead former acquittal or former conviction of such offense." It will be noted that the indictment failed to state the quantity of the property sold. It used the vague, general term "a quantity". It will be noted, too, that the indictment in the case at bar did do just what the opinion suggested might have been done in the Rutherford case to make the description of the property sufficient. The indictment here stated the number of sacks of feed, and the weight of each, together with the value of each and the value of the entire ten sacks, with the name of the owner. This identified the property. It would be impractical, and in some cases impossible, to specify the different types of grain, or other elements, and the percentage of each, composing the dairy feed. It might be added as a practical observation that Barnes himself had no difficulty in determining the nature and identity of the property. In a confession he said he stole "dairy feed." We think the contention under consideration is not well taken.

Barnes requested, but was refused, a peremptory instruction. As we understand his contentions they are, first, that the proof shows at most that he took and carried away only one sack of feed at a time, worth $3.50 per sack, and, therefore, he could not be guilty of grand larceny, and, second, the proof as to the value of the entire ten sacks of feed was insufficient to convict him of grand larceny.

As to the first contention, in his confession Barnes said that he took possession of the feed at the barn of Mr. Glaze Anderson and hauled it one sack at a time in a wheelbarrow to the side of a public road a short distance away, at which point he unloaded his cargo as he made the trips to and from the barn to the road, and that, after piling the ten sacks beside the road, he engaged a man by the name of Keyes to haul it away in Keyes' truck to the home of Lon Hatten, to whom he sold and delivered the feed. Transporting the sacks by means of the wheelbarrow was one continuous, consecutive transaction—at least, the jury had the right to so conclude. And all of the sacks were shortly transported by Barnes to his purchaser by one and the same trip. In Dodson v. State, 130 Miss. 137, 98 So. 579, this Court observed "It was said, however, in Scarver's case that where successive takings are shown to have been one continuous transaction, the thief may be convicted of the final carrying away, and if the value be sufficient it is grand larceny". Barnes was granted this instruction: "The Court instructs the jury that unless you believe beyond a reasonable doubt that the defendant did wilfully, unlawfully, and feloniously, take, steal, and carry away personal property of the value of $25.00 or more during one continuous transaction then it is your sworn duty to find the defendant not guilty." The jury was amply justified in finding the transportation of the sacks of feed was by one continuous transaction.

 █ On the second contention—that the proof was insufficient to show that the value of the stolen property was as much as twenty-five dollars—Mr. Glaze Anderson testified that he was the owner of the ingredients composing the feed; that he furnished the ingredients which went into the finished product. He detailed the nature, percentage and values of the different ingredients. The aggregate value was thirty-five dollars for the ten sacks of feed. He sent these ingredients by a servant to the Laurel Oil Mill and Fertilizer Company, by which concern the ingredients were mixed and sacked and then retransported by the servant to Mr. Anderson in its finished form. It is claimed by Barnes that Anderson's testimony as to values was incompetent because he did not personally see the mixing process. We have carefully examined Mr. Anderson's testimony. We think there is sufficient testimony, based upon Anderson's personal knowledge, to sustain the verdict of the jury that the value of the property was worth at least twenty-five dollars. Anderson had been in the dairy business for many years. He was thoroughly familiar with dairy feed and its component parts and its value. It is reasonably inferable, from all of the testimony, that the lot of feed which he had prepared exceeded the ten sacks stolen by Barnes, and that he had been feeding from that not stolen. He knew that the dairy feed contained the ingredients he had furnished the mixer, such as corn, cottonseed meal, etc. This is his summary, in his words, last given on the stand:

"Now, Mr. Anderson, I believe you had stated that the formula would make 1970 pounds of dairy feed. A. Yes, sir, that's right. Q. Now what was the value of that 1970 pounds of dairy feed? A. I figure $3.50 per sack. Q. $3.50 per sack. All right, and the ten sacks of course would have been - - A. $35.00."

It will be noted that neither of said two contentions, even though sustained, would have resulted in the dis-

charge of Barnes. The effect would have been only to reduce the crime to petty larceny. The value of the sacks alone would have supported the lesser crime.

■ ■ The county attorney, in his argument to the jury, said: "Mr. Anderson testified the value of the feed was being $3.50 a sack and that is not disputed." Objection was made on the ground the last part of the statement was a comment upon the failure of Barnes to take the stand. The objection was overruled. Barnes then asked for a mistrial, which was denied. Barnes says this is ground for reversal and remand of the case.

In Lambert v. State, 199 Miss. 790, 25 So. 2d 477, the Court cited and analyzed most of the cases involving this question which had theretofore been decided by this Court. Under that case and those cited therein the remarks here made did not constitute reversible error. It will be noted that the remarks had reference only to the value of the feed. They were not directed to whether Barnes was guilty or innocent of the stealing. Other witnesses could have testified to such values—not just Barnes himself. The remarks did not apply especially to Barnes. They were applicable to any witness Barnes might have produced to testify about the value of the property. The remarks were general—not personal. As a matter of fact, Barnes did not place any witness upon the stand. He produced no testimony whatever. In addition, Barnes could not have been prejudiced by the remarks for the reason that he obtained this instruction: "The court instructs the jury for the defendant that you cannot convict the defendant simply because he did not testify." That instruction was read to the jury before any argument was made. It called to the attention of the jurors in the most pointed and forceable way the fact that the defendant did not testify. It was much more effective in directing the attention of the jury to the failure of Barnes to testify than were the remarks of the county attorney.

 █ Barnes complains of the refusal of the trial court to grant him certain instructions. The court granted Barnes ten instructions. These sufficiently covered all applicable principles contained in the refused instructions.

Affirmed.

*Lee, Arrington, Ethridge* and *Gillespie*, JJ., concur.