397 So.2d 1095 (1980)
John CONWAY and Robert O'Brien
v.
STATE of Mississippi.
No. 51741.
Supreme Court of Mississippi.
March 12, 1980.
Rehearing Denied April 16, 1980.
Addendum November 12, 1980.
James H. Heidelberg, Fielding L. Wright, Jr., Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Catherine Walker Underwood, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, SUGG and BOWLING, JJ.
BOWLING, Justice, for the Court:
Appellants, John Conway and Robert O'Brien, were indicted and convicted in the Circuit Court of Jackson County for the possession of a controlled substance (methamphetamine) with intent to deliver in violation of Mississippi Code Annotated section 41-29-139 (1972 as amended). The jury returned a verdict of guilty as charged against both defendants. Each was sentenced to serve a term of twenty years with the Mississippi Department of Corrections, and a fine of $15,000 was imposed on each.
On appeal, appellants alleged two assignments of error, namely:
1. The trial court erred in overruling defendants' motion to suppress; and
2. That an alleged remark made by the district attorney in his argument to the jury constituted reversible error.
*1096 The motion to suppress was directed toward the methamphetamine substance secured from an automobile as hereinafter related. The motion contended that the evidence should have been suppressed because of both an illegal arrest and an illegal search.
There is practically no dispute in the facts of the occurrences leading to appellants' arrest. Testimony was received on the motion from three participating officers. There were five officers involved in the matter; however, it was stipulated that the testimony of the other two would be cumulative. The principal participant and the guiding figure in the entire matter was one Don Richards, who at the time was District Supervisor for the Gulfport office of the Mississippi Bureau of Narcotics. His testimony and the testimony of the other officers was that information had been received that a shipment of methamphetamine would arrive in the Jackson County area on the weekend of July 1 and 2, 1978, which dates were a Saturday and Sunday. On information from an informant, a search warrant was secured for a residence in Pascagoula where there lived Matthew Dixon and Richard Johnson and their respective wives. The activities surrounding the search of this residence took place late at night on July 1 and the early morning of July 2. During the course of the search of the residence, appellant John Conway came to the location where he and Agent Don Richards became acquainted.
The officers received information from Johnson that he had carried a man named "Obie" to Mobile, Alabama, on Saturday, July 1, for the purpose of the latter flying to Philadelphia, Pennsylvania, to secure the drugs, and returning on Sunday afternoon to Mobile, where he would be met by someone then unknown.
At noon on Sunday, July 2, the officers met for lunch in Pascagoula to discuss what action to take regarding the information received. As stated, the identity of the person who was to pick up "Obie" in Mobile at the air terminal was unknown. There was doubt that the delivery of the substance would take place due to publicity regarding the arrests the night before. During the afternoon of Sunday, the agents, under Richards' direction, decided to take a chance and go to the Mobile air terminal to conduct surveillance and try to ascertain whether or not the drug would be brought in by "Obie," who would meet him, and what action they would then take.
Late in the afternoon, appellant, John Conway, was observed driving into the air terminal parking lot and entering the terminal. Dixon was also observed arriving in another vehicle and entering the terminal. They were observed talking to each other. At approximately 5:30 P.M., a plane arrived from Philadelphia, by way of Atlanta, "Obie," who was later identified as appellant Robert O'Brien, got off the plane carrying a small suitcase and met appellant Conway and Dixon. The three then went to the parking lot with "Obie" getting into Conway's vehicle with the bag. Both vehicles then headed toward Mississippi. The officers began surveillance of the two vehicles with the admitted intention of stopping them at some point after reaching the State of Mississippi. Shortly after crossing the state line, and before the officers had made any move to stop the vehicles, Conway and Dixon stopped on the side of the road, got out of their cars and approached each other. The officers, under the direction of Richards, immediately stopped both in front of and behind the two suspect vehicles. Upon approaching the Conway vehicle, one officer observed several small plastic bags in a larger plastic bag  all containing a white powdery substance  laying on the rear floorboard of the car in plain view. Conway, O'Brien and Dixon were immediately arrested and placed in the custody of the officers. The substance laying on the floorboard was seized.
One officer was left with the two vehicles, which were later towed by wreckers to Pascagoula. A search warrant for the vehicles was secured. Pursuant to this warrant, the suitcase that had been carried from the air terminal by appellant O'Brien was seized, opened, and a relatively large *1097 amount of methamphetamines found therein. The evidence indicated that the drug was worth a considerable sum of money.
Appellants contend that their warrantless arrest was invalid. It is strongly urged that the officers had ample time and opportunity to apply for and secure a valid arrest warrant, and that without such warrant they did not have probable cause to make the arrests. The answers to these contentions are clear. During the early part of the morning of Sunday, July 2, the officers learned from Johnson, who had recently been arrested at his residence, that on July 1 he had taken a person known only to him as "Obie" to Mobile to catch a plane. Although the officers met appellant Conway at the time of Johnson's arrest, no information was secured by the officers at any time that Conway was the person who would meet "Obie" the next day in Mobile. No information was received by the officers that Dixon would also appear at the air terminal with Conway. The officers were more or less "shooting in the dark" when they decided on Sunday afternoon to go to Mobile, as they anticipated that the person known as "Obie" and never seen by them would be warned not to return to Mobile with the supply of drugs. The only warrant that the officers could possibly have secured would have been a so-called "John Doe" warrant. This was impractical because of the time element involved in traveling to Mobile and setting up surveillance prior to the arrival of the plane. The first identification of the personalities involved in picking up "Obie" was when Conway and Dixon arrived shortly before the plane was due. Conway and Dixon were then observed meeting "Obie," who was carrying a small bag and all three were seen getting into the Conway and Dixon vehicles and heading toward Mississippi. The officers had no alternative but to follow, readily admitting that they intended to stop the two vehicles after reaching the Mississippi state line. The vehicles were not stopped by the officers, and it is clear from the record that an arrest was not made until the powdery substance was seen on the floorboard of the Conway vehicle. It is abundantly clear that under the authorities the officers had probable cause to arrest appellants and Dixon without a warrant.
In United States v. Burnett, 526 F.2d 911 (5th Cir.1976), cert. den. 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801, the Court said:
Although appellants argue that the agents had ample opportunity to obtain an arrest or search warrant, this argument, even if true, does not invalidate their arrests. A warrantless arrest is lawful so long as the arresting officers have probable cause. E.g., United States v. Hofman, 488 F.2d 287 (5th Cir. 1974) (no warrant); United States v. Morris, 477 F.2d 657, 663 (5th Cir.), cert. denied, 414 U.S. 852, 94 S.Ct. 146, 38 L.Ed.2d 101 (1973) (invalid warrant).
In the more recent case of United States v. Parker, 549 F.2d 1217 (5th Cir.1977), we find the following:
Parker also contends that the government agents' failure to obtain an arrest warrant vitiated his arrest and rendered his subsequent confession illegal. Parker does not dispute that the agents had probable cause to arrest him, but asserts that they should have obtained a warrant in the approximately 34 hours between the time that they became aware of his whereabouts and the time of the arrest. This argument has no merit. While it is preferable for law enforcement officers to obtain arrest warrants where feasible, Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Wong Sun v. United States, 371 U.S. 471, 479-82, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), an arrest supported by probable cause should not be invalidated solely because the officers failed to secure a warrant, Gerstein v. Puch, 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); United States v. Hofman, 488 F.2d 287 (5th Cir.1974). Although Parker argues that the officers had ample opportunity to obtain an arrest warrant, this argument, even if true, does not invalidate his arrest, United States v. Burnett, 526 F.2d 911 (5th Cir.), cert. denied, 425 U.S. 977, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976).
*1098 We, therefore, readily see that appellants cannot take advantage of the time element to complain that an arrest warrant was not secured. We now consider the question as to whether or not the officers had probable cause for the eventual arrest of the three persons.
In Strode v. State, 231 So.2d 779 (Miss. 1970), this Court, in discussing probable cause, said:
Probable cause is a practical, nontechnical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
In Joyce v. State, 327 So.2d 255 (Miss. 1976), this Court, in holding that probable cause existed, stated as follows:
Not only does the evidence prove the tip to be self-verifying, but also that an independent investigation was made before Wann's car was stopped and searched. The narcotics agents observed Wann picking up two very heavy suitcases at the baggage checkout and carrying them to his car. Sixty pounds of marijuana compressed in kilo bricks does not occupy much space. It could be carried in suitcases, but it would make them heavier than usual. They observed Joyce and his companions furtively and nervously looking around to see if anyone was watching them and then as they drove slowly away from the airport the agents observed Wann, the driver, frequently looking in his rearview mirror and appellant and Saczynski, the passengers, frequently looking through the rear window.
In the case of Isaacks v. State, 350 So.2d 1340 (Miss. 1977), the Court, through Justice Inzer in the majority opinion and Justice Sugg in the dissenting opinion, discussed the many cases dealing with circumstances under which evidence may be seized when in "plain view" without a warrant. The majority opinion stated as follows:
Only under certain circumstances may officers seize contraband in "plain view" without a warrant. They are: (1) incident to a valid arrest, (2) where officers have a valid search warrant to search a given area for specific objects and in the course of the search come across contraband, (3) incident to "hot pursuit" of a fleeing suspect, or (4) incident to a search of a stopped automobile on probable cause or because of the mobility of the vehicle... .
From the facts and circumstances hereinbefore related, it is evident that the conditions under (1) and (4) apply here. As for (1), we have already seen that before the contraband was viewed, probable cause existed for a warrantless arrest of appellants. The seizure of the contraband can also be justified under (4), as there was probable cause to stop the car, and the narcotics agents were then entitled to seize the powdery substance within their plain view. Green v. State, 348 So.2d 428 (Miss. 1977).
The United States Supreme Court also has spoken on the situation where contraband objects are in plain view of an officer who has a right to be where the objects may be seen. In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), it was said:
It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence... .
The trial court was correct in overruling appellants' motion to suppress.
Appellants claim reversible error because of an alleged statement made by the district attorney in argument to the jury. The only thing in this record in this regard is the following that was dictated to the court reporter after the closing arguments had been made:
BY MR. WRIGHT: In view of the fact that the closing arguments of all counsel was not being recorded, and for the purpose *1099 of the record, the defendant moved for a mistrial based on a comment made by the assistant district attorney, Joe R. Colingo, during his closing argument to the effect that the testimony was uncontradicted. At which point counsel objected and moved for a mistrial based on such a statement being a comment on the defendant not rebutting any testimony.
BY MR. HUNTER: May it please the court, the only exception to that is I believe the statement was, that the evidence was uncontradicted.
BY MR. COLINGO: That's what the statement was.
BY MR. WRIGHT: It's the same thing.
BY MR. COLINGO: No, it's not.
BY THE COURT: There is a case on it, but I will overrule it.
There is no way that this Court can determine the context in which the alleged statement of the district attorney was made to the effect that "the testimony" was uncontradicted. This Court has held many times that each case must be considered individually where there is a question as to the prosecution's comments on the defendant's failure to testify. In Peterson v. State, 357 So.2d 113 (Miss. 1978), we said:
[E]ach case on these types of matters has to be considered in the light of that particular case. The facts of all are different ...
In Barnes v. State, 230 Miss. 299, 92 So.2d 863 (1957), this Court stated:
The county attorney, in his argument to the jury, said: "Mr. Anderson testified the value of the feed as being $3.50 a sack and that is not disputed ..." It will be noted that the remarks had reference only to the value of the feed. They were not directed to whether Barnes was guilty or innocent of the stealing. Other witnesses could have testified to such values  not just Barnes himself. The remarks did not apply especially to Barnes. They were applicable to any witness Barnes might have produced to testify about the value of the property. The remarks were general  not personal. As a matter of fact, Barnes did not place any witness upon the stand. He produced no testimony whatever. In addition, Barnes could not have been prejudiced by the remarks for the reason that he obtained this instruction: "The court instructs the jury for the defendant that you cannot convict the defendant simply because he did not testify." That instruction was read to the jury before any argument was made. It called to the attention of the jurors in the most pointed and forceable way the fact that the defendant did not testify. It was much more effective in directing the attention of the jury to the failure of Barnes to testify than were the remarks of the county attorney.
In Smith v. United States, 234 F.2d 385 (5th Cir.1956), we find the following:
We think it quite clear that this was fair comment on the defendant's failure to produce witnesses touching on a subject which he injected in his conduct of the trial. During his argument and cross-examination of witnesses, he referred to alleged criminal acts of government witnesses. The comment by the United States Attorney that the accused had the opportunity to present any criminal action in the form of testimony is similar to that which was found by the court to be unobjectionable in Langford v. United States. There a statement by counsel that "the defendant had no witness to impeach the stories of [government witnesses]" was held by the court to be in substance a statement that the stories were not contradicted. As this court has said in Jamail v. United States, the rule against commenting on the failure of a defendant to testify in his own behalf "does not go to the extent of forbidding argument by counsel for the prosecution to the effect that the evidence against a defendant is uncontradicted." The same is true with respect to a failure to produce testimony on any phase of the defense upon which the accused seeks to rely.
In Clark v. State, 260 So.2d 445 (Miss. 1972), we stated the following:

*1100 ... There are a few cases where the comments are of the character here under consideration in which we have held that the comments did not amount to reversible error. In those cases there was either an eye witness other than the accused available to him and who was not placed on the stand, or the guilt of the accused was so manifest that no fair jury could have returned a verdict other than guilty. Chatman v. State, 244 Miss. 659, 145 So.2d 707 (1962)... .
In Lambert v. State, 199 Miss. 790, 25 So.2d 477 (1946), this Court stated in discussing the question now before us:
... "the testimony for the state" includes all matters on which the State introduces evidence ..." "Uncontradicted" would include all evidence of a contradictory nature, even circumstantial evidence. .. .
In Johnson v. State, 109 Miss. 622, 68 So. 917 (1915), the alleged statement by the prosecuting attorney was almost identical with the one propounded here. The Court, in affirming the conviction, stated:
The evidence for the state was uncontradicted  it stood alone as the evidence in the case  and to say so, in our opinion, cannot be construed as any sort of reference, of any character whatever, to the failure of defendant to testify. To so hold, it seems to us, would be to deny to the state the privilege of arguing the case at all.
In Lambert v. State, supra, and as reaffirmed in Chatman v. State, supra, it was stated:
... this Court has reversed for comments of the character here under consideration, unless (1) there was an eye witness other than defendant available to the accused and who was not placed upon the stand by him, or (2) the guilt of the defendant was so manifest that no fair jury could have returned a verdict other than guilty.
Also see Martin v. State, 200 Miss. 142, 26 So.2d 169 (1946).
As hereinbefore emphasized, based on the record before us, we are unable to make a reasonably accurate determination as to the context in which the alleged statement was used. There was no bill of exceptions requested. No testimony or evidence whatever was introduced by the appellants and the statement could have been made in connection with many "objects of evidence" that were uncontradicted. Furthermore, as stated in Chatman, supra, no fair minded jury could have returned a verdict other than guilty in this case.
AFFIRMED.

ADDENDUM
Subsequent to the issuance of the foregoing opinion and the denial of appellants' petition for rehearing and the mandate of this Court, there was filed a joint motion by appellants and appellee to remand the cause for resentencing. The Court considered the motion en banc and it was sustained. The cause was remanded to the Circuit Court of Jackson County, Mississippi, solely for the purpose of resentencing the appellants under the proper statute.
AFFIRMED AND REMANDED FOR RESENTENCING.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and COFER, JJ., concur.