# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KA-01111-SCT

*TERRY ALLEN BROOKS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/20/1998 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LELAND H. JONES, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JOHN R. HENRY |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 06/22/2000 |
| MOTION FOR REHEARING FILED: | 7/31/2000 |
| MANDATE ISSUED: | 7/13/2000 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF FACTS AND CASE

¶1. On the night of August 18, 1997, Keith Williams ("Williams") was shot and killed outside the Rising Sun apartments in Greenwood. Deputy Charlie Cooley of the Leflore County Sheriff's Department testified that he was patrolling in the area when he heard a cry for help, and found Williams lying on the ground. Williams told him that he had been shot by a man named Stewart.

¶2. On January 30, 1998, Terry Allen Brooks ("Brooks") was indicted by a Leflore County grand jury for murder. The grand jury found in its indictment that:

> Terry Brooks, acting in concert with Corkceno Stewart, Walter Stewart, and Sammie Grant, each together with the other, on or about the 18th day of August, 1997, in Leflore County, Mississippi, did unlawfully, wilfully, feloniously, and of his malice aforethought, kill and murder Keith Williams, a human being.

On May 18, 1998, Brooks was tried for murder in the Leflore County Circuit Court. The circuit judge allowed Brooks to conduct voir dire as well as part of the arguments at trial, but the judge refused Brooks' request to be permitted to cross-examine prosecution witnesses. On May 20, 1998, the jury found Brooks guilty of murder, and Brooks timely appealed to this Court.

**I. As the Appellant was charged under Miss. Code of 1972 § 97-3-19, as annotated and amended, and the indictment charged Brooks, with killing and murdering a human of his own malice aforethought while acting in concert with others, and the State offered no proof that Brooks did kill and murder the victim, the jury verdict is contrary to the evidence presented at trial. Further that the trial court erred in overruling Brooks' motion for a directed verdict on the ground at the close of the State's case-in-chief.**

¶3. Brooks argues that the evidence at trial was legally insufficient to convict him of the murder of Keith Williams. Miss. Code Ann. § 97-1-3 (1994) provides that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not." In a prosecution of an accused for having aided and abetted a felony, the State must establish in the proof, "beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the crime charged was committed by another, and to further prove ... that the accused was present, consenting, aiding, and abetting such person in the commission of the crime charged." *Van Buren v. State*, 498 So.2d 1224, 1227 (Miss. 1986).

¶4. Upon conviction of the criminal defendant, the presumption of innocence is replaced by a presumption that the conviction is valid and may only be rebutted by a finding of reversible error on appeal. *Gollott v. State*, 646 So.2d 1297, 1300 (Miss.1994). When a defendant challenges the sufficiency of the evidence to support a conviction, the evidence which supports the verdict is accepted as true by the reviewing court, and the State is given the benefit of all reasonable inferences flowing from the evidence. *Rhodes v. State*, 676 So.2d 275, 281 (Miss.1996).

¶5. The prosecution's case against Brooks was based largely upon the testimony of Sammy Grant. Sammy Grant testified that a dispute had arisen between Corkceno Stewart and Keith Williams on the night before Williams was murdered. According to Grant's testimony, Corkceno Stewart and Williams were engaged in a rivalry over the affections of Tina Grant, Sammy Grant's sister. Sammy Grant testified that Brooks drove him, Walter Stewart, and Corkceno Stewart to the Rising Sun apartments on the night of Williams' murder. Grant testified that:

Q: Okay. And once y'all made it out to Rising Sun, what happened?

Grant: That's when they went to talking about - - Corkceno Stewart went to talking about asking Walter Stewart for the gun, and he wouldn't give it to him. He asked Terry Brooks. He wouldn't give it to him. ... Then he asked Walter Stewart again. He wouldn't give it to him. He asked Terry Brooks again. Terry Brooks said, "(expletive deleted). Handle your business, n***er." Just like that right there.

Q: That's at the point where he handed him the gun?

Grant: That's when he handed him the gun.

Sammy Grant testified that, after Brooks gave Stewart the gun, he (Sammy Grant) went up to the apartment where his sister and Keith Williams were visiting. Grant testified that he tried to warn his sister about "what was about to go on" but his sister did not seem to comprehend his warnings. Sammy Grant testified that, at this point, Keith Williams came out of the apartment:

And I was steady trying to tell her what was about to go on, and at that time right there that's when Keith Williams came out, and Keith Williams asked the same thing "Who is that?" That's when Terry Brooks said, "What's up, Player?" Just like that right there. Then Keith said, "What's up?" Just like that right there. And they kept saying "Who is that?" I kept trying to tell them what was going on, pulling my hair out and scratching my head and stuff, and I thought since they didn't want to listen if I just walk away they'll go into the house. So when I walked away, that's when Corkceno Stewart came out, and he said something. I couldn't hear what he was saying. He said something and went to shooting.

Sammy Grant also testified as to Brooks' behavior after the shooting:

(Brooks) turned the lights off the car at one time. Then he turned them back on. Then he went to talking. It was just him. He went to talking saying, "Well, we know your sister ain't going to snitch, it will be one of us, and if we find out who snitched, we're going to handle them too."

In the view of this Court, the testimony of Sammy Grant alone was sufficient to put the issue of Brooks' guilt before the jury. Grant testified that Brooks gave Stewart his loaded pistol as he told Stewart to "handle his business." Grant further testified that, after the shooting, Brooks warned the other witnesses in the car not to "snitch," lest they be "handle(d)" as well. Sammy Grant's testimony, if deemed credible by a jury, was sufficient to lead a reasonable juror to conclude that Brooks had the necessary *mens rea* to assist Stewart in the murder of Williams.

¶6. In addition, the testimony of Tina Grant is consistent with Sammy Grant's testimony and contradicts Brooks' sworn testimony that he was not present at the scene of the murder. Tina Grant testified that Keith Williams was visiting with her that Sunday night when Sammy knocked on the door and urged Williams to come outside. Tina Grant testified that:

Me and Keith walked on to the road, and I looked back, and seen Corkceno Stewart. He came out shooting a gun. I was like "Run, Keith, run." And Keith took off to running and stuff. He shot about five times. I heard - - the fourth and fifth time I heard Keith hollering "oh, oh." And I ran into the house and tried to wake Terena up.

Q: Did you see anyone else out there?

A: I seen Terry Brooks.

Q: Is that the same person that's sitting here at the counsel table?

A: Yes, ma'am.

Q: You saw him. Where did you see him?

A: In the road. He had on all black, with a black hat and some black boots and a black outfit or something. I know he had on all black.

Q: I think you'd already told us that you'd known him about six months prior to this?

A: Yes, Ma'am.

¶7. In the view of this Court, there is sufficient evidence in the record to support the jury's conclusion that Brooks was "present, consenting, aiding, and abetting ... the commission of the crime charged." The issue of Brooks' guilt was properly put before the jury, and this point of error is without merit.

### II. The verdict of the jury was the result of prejudice in that the prosecutor's closing arguments made reference to a plea bargain which was offered to Brooks and declined.

¶8. Brooks argues that the prosecutor committed reversible error when, during her closing arguments, she informed the jury that Brooks had been offered a plea bargain but that he had refused to accept the offer. The prosecutor argued before the jury that:

> And you heard a lot of testimony about Grant, Sammy Grant. What they didn't tell you is that he was offered the same thing Grant was. He just didn't take it. He took a chance rolling the dice. He's relying on you to turn him loose when he knows he's guilty, just as all of the [sic.] are.

After the prosecutor had finished her closing arguments, counsel for Brooks approached the bench and objected to the prosecutor's arguments:

> Mr. Jones: Judge, I would request the record indicate an objection to improper rebuttal by - - argument by Ms. Chiles when she argued that the defendant was offered a plea like Grant and he chose to roll the dice. I don't know how to cure that. I didn't want to call attention to it at the time. That's the reason I'm making - may not be - a little tardy on being contemporaneous, but I didn't want to interrupt her and I didn't want to call special attention to it, but I didn't go into that. She was not - it's just certainly not proper for her to argue that this defendant was offered a plea bargain and decided not to take it.

> The Court: All right- let the record reflect . . .

> Mr. Jones: I don't know how to cure it.

> The Court: Let the record reflect the defendant's objection.

¶9. In the view of this Court, the prosecutor's reference during closing arguments to Brooks' failure to accept a plea bargain was clearly error, and the only issue is whether it should be considered reversible error. Prosecutors are afforded the right to argue anything in the State's closing argument presented as evidence. *Hanner v. State*, 465 So. 2d 306, 311 (Miss. 1985) (citing *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed. 2d 235 (1983)). However, arguing statements of fact that are not in evidence or necessarily inferable from it which are prejudicial to the defendant is error. *Tubb v. State*, 217 Miss. 741, 744, 64 So. 2d 911 (1953). Prosecutors should refrain from doing or saying anything that would tend to cause the jury to disfavor the defendant due to matters other than evidence relative to the crime. *Sumrall v. State*, 257 So. 2d 853, 854 (Miss. 1972).

¶10. It is apparent that any evidence relating to Brooks' failure to accept a plea bargain was not in evidence, nor could it have validly been admitted into evidence. Mississippi has adopted Rule of Evidence 410, Inadmissibility of Pleas, Plea Discussions, and Related Statements, which provides that:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea

discussions:

(1) A plea of guilty which was later withdrawn;

(2) A plea of nolo contendere;

(3) Any statement made in the course of any proceedings under Mississippi statutory or rule of court provisions regarding either of the foregoing pleas; or

(4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which does not result in a plea of guilty or which results in a plea of guilty later withdrawn.

However, such a statement is admissible (1) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (2) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

M.R.E. 410.

¶11. While evidence that a plea offer was made by the prosecution and rejected by the defendant does not fall squarely under any of the four categories in Rule 410, it is clear that the prosecutor's statement violates the spirit of Rule 410. Moreover, courts in other jurisdictions have judicially promulgated rules of law forbidding the introduction of such evidence. Although neither party cites, any cases in which the *prosecution* sought to introduce evidence that a defendant rejected a plea bargain, there is authority holding that a defendant may not attempt to demonstrate his belief in his own innocence by the fact that he turned down a favorable plea bargain. A Utah appellate court has held that:

Fairness dictates that the restriction should apply to both parties in the negotiations. Significant issues of public policy also support the position that evidence of plea discussions in which the defendant participated should not be admissible either against or in favor of the defendant.

*State v. Pearson*, 818 P.2d 581, 583 (Utah Ct.App.1991). *State v. Davis*, 70 Ohio App.2d 48, 51, 434 N.E.2d 285, 287-88 (1980); *See also: United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir. 1976). We find the aforementioned authority to be persuasive and hold that evidence of a defendant's refusal to accept a plea bargain may not validly be entered into evidence by either the prosecution or defense.

¶12. As stated previously, however, the more difficult question is whether the prosecutor's argument should be considered reversible error. The State argues that, even assuming that the Prosecutor's closing argument was improper, it should be considered harmless error. This Court has held that any allegedly improper prosecutorial comment must be evaluated in context, taking into consideration the circumstances of the case when deciding the comment's propriety. *Davis v. State*, 660 So. 2d 1228,1248 (Miss. 1995). The test for determining if improper argument by the prosecutor to the jury requires reversal is "whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Davis*, 660 So. 2d at 1248 (quoting *Davis v. State*, 530 So. 2d 694, 701 (Miss.1988)).

¶13. In her closing arguments, the prosecutor appeared to castigate Brooks for failing to accept the same plea bargain offer which had been accepted by Sammy Grant. While not directly so arguing, the

prosecutor's remarks might reasonably have been understood by the jurors as an assertion that Brooks' guilt was, essentially, a foregone conclusion and that Brooks had, in effect, wasted the court's time by failing to plead guilty and by exercising his right to a trial by jury. In the view of this Court, the present issue implicates more than mere evidentiary issues, given that the prosecutor sought to have the jury draw negative inferences from the fact that Brooks chose to exercise his fundamental constitutional right to a trial by jury.

¶14. The improper argument in the present case may be analogized to those in which a Prosecutor attempts to call attention to the defendant's failure to testify. This Court has held that such arguments may constitute reversible error, even absent an objection at trial. *See, e.g., **Griffin v. State***, 557 So.2d 542, 552 (Miss. 1990), ***Livingston v. State***, 525 So.2d 1300, 1306-07 (Miss.1988); ***Stringer v. State***, 500 So.2d 928, 940 (Miss.1986); ***West v. State***, 485 So.2d 681, 688 (Miss.1985). This Court concludes that the improper argument in the present case similarly constitutes reversible error, and we must therefore reverse and remand for new trial.

### III. The Court erred in failing to make a full determination as to Brooks' competency to conduct voir dire of the jury and assisting in making closing arguments, thereby denying Brooks' right to counsel and depriving him of a fair trial.

¶15. Although this Court has elected to reverse and remand as to issue II, we nevertheless deem it appropriate to consider Brooks' third point of error, given that this point of error contains issues likely to arise once again on remand. At trial, Brooks made repeated requests to be allowed to represent himself at trial. The trial judge allowed Brooks to conduct voir dire, but after observing Brooks' performance, the judge concluded that he would restrict Brooks' ability to further conduct his own defense.

¶16. While every accused has the constitutional right to be represented by an attorney, it must be balanced against the right of an accused to represent himself, that is, to present his own case pro se without an attorney. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)*; Metcalf v. State*, 629 So.2d 558, 562 (Miss. 1993). This Court has held that "[e]ven where the issue of competency to stand trial has not been raised by defense counsel, the trial judge has an ongoing responsibility to prevent the trial of an accused unable to assist in his own defense." ***Conner v. State***, 632 So.2d 1239, 1248 (Miss. 1993).

¶17. This Court has indicated that the test for competency to stand trial must be met before a defendant can be said to be capable of intelligently and knowingly waiving the right to counsel. *Howard v. State*, 701 So.2d 274, 280 (Miss. 1997). The test for competency to stand trial mandates that a defendant be one (1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity and complexity of the case. *Howard*, 701 So.2d at 280 (citing ***Conner***, 632 So.2d at 1248).

¶18. This Court has recognized the difficult position faced by judges in ruling on the present issue, and we have also recognized the potential for defendants to play "games" in this context. This Court stated in ***Evans v. State***, 273 So.2d 495, 499 (Miss. 1973) that:

     [W]e have recognized a right of a defendant to proceed without counsel and to refuse the

representation of assigned counsel.... [H]e may not use this right to play a 'cat and mouse' game with the court, ... or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel.

(citing *United States v. McMann*, 386 F.2d 611 (2d Cir.1967).

¶19. In the present case, the trial judge refused Brooks' direct and repeated requests to be allowed to cross-examine prosecution witnesses. The following exchange took place at trial between Brooks and the trial judge:

By the Court: All right, Mr. Brooks, on yesterday I made a ruling that having observed your demeanor and behavior during voir dire that you lack the capacity to make a knowing and intelligent waiver on your important right to have this trained lawyer conduct this trial, and so I am not going to allow you to conduct any cross-examination or direct examination of any witnesses. You can consult with your lawyer, but the conduct of the case is in the hands of your attorney as far as how he wants to manage the trial of the case. So I'm not going to allow you - - I'm going to deny your request for what you're seeking now.

. . . .

By the Defendant: (A)s far as interrogating or questioning the witnesses if there is any provision of the law I ask, your Honor, to give me at least one opportunity in that particular area because that was before me yesterday was totally different than what I had prepared for.

By the Court: I understand what you're saying, but having observed the way that it went yesterday, I have made a finding that you lack the capacity to waive your right to a lawyer.

By the Defendant: I'm not waiving my right.

By the Court: Well, you are partially waiving your right to have your lawyer conduct this trial by requesting to conduct the cross-examination of this witness, and I have already made a ruling on that, and so I'm not going to reverse my ruling.

By the Defendant: Okay. I'm aware of that, but how am I supposed to get the truth to the court?

By the Court: Well, that's the job of the lawyer, and he knows a lot more about how to do it than you do.

By the Defendant: Okay. So I have to get him to read the questions?

By the Court: That's correct.

By the Defendant: Okay. And if he refuses?

By the Court: That's the business of how he wants to conduct this trial because it's not - - it's his decision. He's the lawyer.

By the Defendant: If he refuses, I just sit there? See, there are mitigating circumstances surrounding

this whole trial.

By the Court: Well, your lawyer is trained and experienced in knowing what is the best approach to take to present this case to the jury, and that's why he's entrusted with that important duty. So he's going to make those decisions.

By the Defendant: All right.

By the Court: Let's proceed.

¶20. This appeal is a difficult one on the present issue, for several reasons. First, the trial judge expressly found that Brooks "lack(ed) the capacity to make a knowing and intelligent waiver" of his right to counsel. The judge accordingly concluded that he had erred in allowing Brooks to conduct voir dire, and the judge resolved not to compound this error by allowing Brooks to cross-examine prosecution witnesses. However, the judge did permit Brooks to conduct portions of the remaining trial, including the majority of the defense's closing argument.

¶21. The circuit judge's finding notwithstanding, it is far from clear that Brooks lacked the capacity to waive his right to counsel. This Court's test for capacity to waive the right to counsel, as discussed in *Howard*, is not an onerous one, merely inquiring as to whether the defendant has the capacity to understand the proceedings, communicate with his attorney, recall relevant facts, and testify in his own behalf. 701 So.2d at 280. While this Court has not had the opportunity to observe Brooks' demeanor, the record does contain a great deal of Brooks' statements, testimony, and an abundance of motions filed with this Court, in Brooks' own handwriting. It is apparent that Brooks is not an experienced practitioner of the law, but he is more than able to make coherent, and even intelligent, arguments, and a thorough reading of Brooks' statements in the record casts serious doubt upon the trial judge's conclusion that Brooks lacks basic mental capacity. Indeed, the trial judge's own statements to Brooks, quoted *supra*, indicate that the judge was motivated largely by a (justified) belief that Brooks' lawyer was better qualified to conduct his defense than Brooks.

¶22. The issue is further complicated by the fact that Brooks' attorney argues in his appellate brief that Brooks *did* in fact lack the capacity to waive his right to counsel, and that the trial court erred in allowing him to conduct any part of his defense *at all*. This Court finds this argument to be without merit. The trial judge's decision to allow Brooks to conduct most of his closing argument is consistent with Article 3, Section 26 of the Mississippi Constitution, which guarantees a defendant the right "to be heard by himself or counsel, or both." Brooks had a constitutional right to participate in his own defense, if mentally competent, and there is little support in the record for the trial court's finding that he lacked the capacity to waive his counsel.

¶23. Having rejected the argument that the trial court erred in permitting Brooks to participate in his defense at all, the question arises as to whether the trial court erred in refusing to allow Brooks to have even greater participation in his defense, including cross-examining witnesses. Although Brooks' attorney has not raised these arguments in his brief, Brooks has filed with this Court "emergency" motions asking for substitution of counsel, and these motions include arguments that his counsel was ineffective in not properly cross-examining the prosecution witnesses at trial.[1]

¶24. While Brooks' arguments of ineffective assistance of counsel would have been more appropriate in the context of a PCR motion, this Court may properly take notice of the fact that Brooks has resisted the

participation of his attorney in the present case from the earliest stages of the trial, and this resistance continues unabated to the present day. Although the performance of Brooks' counsel at trial appears to have been competent, and Brooks' performance in his own defense much less so, the fact remains that Brooks has a constitutional right, if mentally competent, to conduct his own defense.

¶25. The U.S. Supreme Court has emphasized that the fact that a defendant may be foolish to waive his right to counsel by no means should bar a mentally competent defendant from exercising his constitutional right to conduct his own defense:

> Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.

*Faretta*, 422 U.S. at 834 (citing *Illinois v. Allen*, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 1064, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).

¶26. This Court should not ignore a defendant's persistent pleas that he be allowed to exercise a constitutional right, even if it appears that the defendant would have been wiser to waive the right in question. It should be noted, however, that the trial judge did not completely deny, but merely limited, Brooks his right to represent himself at trial. In considering a defendant's rights in the present "hybrid" representation context, the United States Supreme Court has stated that:

> (T)he primary focus must be on whether the defendant had a fair chance to present his case in his own way. . . . First, the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendants' objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of the witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded. Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.

*McKaskle v. Wiggins,* 465 U.S. 168, 178-79, 104 S.Ct. 944, 79 L.Ed. 2d 122 (1984).

¶27. In the view of this Court, there is question as to whether the first part of the *McKaskle* test was violated in the present case. The trial judge expressly refused Brooks' request to be permitted to cross-examine the prosecution's witnesses, and *McKaskle* clearly dictates that a mentally competent defendant be permitted to "control the questioning of witnesses." As noted *supra*, the trial judge specifically informed Brooks that:

> By the Defendant: Okay. So I have to get him to read the questions?
>
> By the Court: That's correct.
>
> By the Defendant: Okay. And if he refuses?
>
> By the Court: That's the business of how he wants to conduct this trial because it's not - - it's his

decision. He's the lawyer.

By the Defendant: If he refuses, I just sit there? See, there are mitigating circumstances surrounding this whole trial.

By the Court: Well, your lawyer is trained and experienced in knowing what is the best approach to take to present this case to the jury, and that's why he's entrusted with that important duty. So he's going to make those decisions.

The trial judge thus informed Brooks that his attorney had the final discretion in directing the questioning of witnesses. Assuming that Brooks was in fact mentally competent, then his rights were at least arguably violated in this regard.

¶28. Given that this Court has elected to reverse as to Issue II, it is unnecessary to determine whether the trial court committed reversible error in denying Brooks' request to cross-examine prosecution witnesses. Instead, this Court merely directs that, at retrial on remand, the trial court should take note of the established precedent of the U.S. Supreme Court and this Court in ruling upon any requests by Brooks to participate in his own defense. The judgment of the Leflore County Circuit Court is reversed, and this case is remanded to that court for a new trial consistent with this opinion.

¶29. **REVERSED AND REMANDED.**

> **PITTMAN AND BANKS, P.JJ., McRAE AND WALLER, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, COBB AND DIAZ, JJ.**
>
> SMITH, JUSTICE, DISSENTING:

¶30. In my view, the majority erroneously concludes that the prosecutor's comments regarding Brooks's refusal to accept a plea bargain constitutes reversible error. Reversible error occurs only where an improper argument results in a decision influenced by prejudice, rather than upon the evidence presented to the jury. *Davis v. State*, 530 So. 2d 694, 701 (Miss. 1988). Brooks has failed to demonstrate that the prosecutor's argument resulted in prejudice to his case. The prosecutor's comment, though improper, is not reversible error. Therefore, I respectfully dissent.

¶31. A prosecutor's improper comment is harmless beyond a reasonable doubt where the evidence of guilt is so overwhelming that the jury would have returned a guilty verdict in spite of the prosecutor's comment. *Beckwith v. State*, 707 So. 2d 547, 584 (Miss. 1997) (citing *Lee v. State*, 435 So. 2d 674, 678 (Miss.1983); *Conway v. State*, 397 So. 2d 1095, 1100 (Miss. 1980); *Chatman v. State,* 244 Miss. 659, 145 So. 2d 707 (1962); *Lambert v. State*, 199 Miss. 790, 25 So. 2d 477 (1946)). At trial, Sammy Grant testified that Brooks drove Grant, Corkceno Stewart, and Walter Stewart to look for Williams at the Rising Sun apartments in Greenwood. Grant testified that Brooks knew that their purpose in driving to the Rising Sun was to search for Williams. Grant testified that Corkceno Stewart asked Brooks for his gun, and that, after refusing once, Brooks then passed Corkceno a silver, .22 caliber revolver, saying "Handle your business, N*****." Tina Grant testified that Brooks was standing in the road, wearing black clothing, when Williams was shot. Sammy Grant testified that Brooks drove three men away from the scene after the shooting and that Brooks stuck the gun in the hood of the station wagon.

¶32. Deputy Charlie Cooley testified that he saw Brooks's blue station wagon in the Rising Sun about the time he discovered Williams and that the vehicle came out from the area where Williams was shot. The station wagon was found in a wooded area behind Brooks's mother's residence, obscured by bushes and trees. The vehicle appeared to be abandoned because its hood was raised with bags beneath the hood, the battery cables were loose, and the breather cap had been taken off. Black clothing belonging to Brooks was found in the car.

¶33. Brooks denied driving the three men to search for Williams as well as any participation in the murder. Brooks testified that he merely loaned the station wagon to Corkceno the night of the murder. Brooks testified that he did not own a silver or chrome .22 caliber revolver. However, on cross-examination, Brooks stated that though he had never owned a chrome .22 caliber revolver, his mother did own such a gun and that he often carried the gun with him. Brooks stated that the revolver was in the glove compartment of the station wagon the night he loaned the station wagon to Corkceno.

¶34. It is well established that there will be no reversal unless the prosecuting attorney's argument created "unjust prejudice against the accused resulting in a decision influenced by prejudice." *Johnson v. State*, 596 So. 2d 865, 869 (Miss.1992); *See also* *Ormond v. State*, 599 So. 2d 951, 961 (Miss.1992); *Dunaway v. State*, 551 So. 2d 162, 163 (Miss.1989); *Craft v. State*, 226 Miss. 426, 84 So. 2d 531, 535 (1956). In this case the jury's verdict was not prompted by prejudice, but by the evidence. "Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." *Wilcher v. State*, 697 So. 2d 1087, 1110 (Miss. 1997) (quoting *Ahmad v. State*, 603 So.2d 843, 846 (Miss. 1992)).

¶35. The majority states that the prosecutor's comment is analogous to a remark on a defendant's failure to testify and thus is constitutionally impermissible and constitutes reversible error. Still, the principle that each case must be considered individually on the facts of that particular case applies even when there is a question as to the prosecution's comment on the defendant's failure to testify. *See* *Beckwith v. State*, 707 So. 2d 547 (Miss. 1997). It applies equally in the case sub judice. When measured against the evidence as a whole, it is fair to say that the prosecutor's statement was not so inflammatory as to have resulted in a jury verdict based upon the comment. *See* *Taylor v. State*, 672 So. 2d 1246 (Miss. 1996). The prosecutor's comment, while inappropriate, did not deny Brooks a fair trial. Given the comment made by the prosecutor and the evidence before the jury, this issue does not require reversal.

**MILLS, COBB AND DIAZ, JJ., JOIN THIS OPINION.**

1. As noted *supra*, Brooks firmly objected to the trial judge's refusal to allow him to cross-examine the prosecution's witnesses.